STATE OF NORTH CAROLINA v. BOBBY MAY RIGGS AND PAMELA RIGGS

No. 30PA90

(Filed 7 February 1991)

1. **Searches and Seizures § 24 (NCI3d) — reliability of informant — statement in affidavit — incorrect subjective belief of affiant**

    An officer's statement in an affidavit to obtain a search warrant that one informant used to purchase marijuana was reliable in that the information he had given in the past had been found to be true and exact was sufficient to establish that informant's reliability. The affidavit was not materially inaccurate because the officer testified at a pretrial suppression hearing that he had mistakenly represented that the informant was reliable where this testimony was based on the officer's incorrect subjective belief that the term "reliable" was a term of art applicable in drug cases only to persons who had made at least two prior controlled purchases of illegal drugs and on the fact that the informant had made only one prior purchase. The defendants' rights are governed by the law rather than by the officer's misunderstanding of it.

    **Am Jur 2d, Searches and Seizures § 65.**

    **Propriety of considering hearsay or other incompetent evidence in establishing probable cause for issuance of search warrant. 10 ALR3d 359.**

2. **Searches and Seizures § 21 (NCI3d) — search warrant — showing reliability of information**

    In showing that information is reliable for purposes of obtaining a search warrant, the State is not limited to certain narrowly defined categories or quantities of information. What is popularly termed a "track record" is only one method by which a confidential source of information can be shown to be reliable for purposes of establishing probable cause.

    **Am Jur 2d, Searches and Seizures §§ 68, 69.**

3. **Searches and Seizures § 24 (NCI3d) — marijuana purchases in driveway — probable cause for warrant to search residence**

    Where information before a magistrate indicates that suspects are operating, in essence, a short-order marijuana drive-through on their premises, the logical inference is that

a cache of marijuana is located on those premises, and that inference establishes probable cause for a warrant to search the premises, including the residence. Therefore, evidence that two controlled purchases of marijuana, one only 48 hours earlier, were made by persons who had entered defendants' driveway established probable cause for the issuance of a warrant authorizing a search of defendants' residence.

**Am Jur 2d, Searches and Seizures §§ 68, 69.**

ON discretionary review pursuant to N.C.G.S. § 7A-31 of the decision of the Court of Appeals, 96 N.C. App. 595, 386 S.E.2d 599 (1989), which reviewed the trial of the defendants and the judgments entered on 19 November 1987 by *Reid, J.*, in the Superior Court, ONSLOW County and awarded the defendants a new trial. Heard in the Supreme Court 9 October 1990.

*Lacy H. Thornburg, Attorney General, by Jane R. Garvey, Associate Attorney General, for the State.*

*Jimmy F. Gaylor for defendant-appellees.*

MITCHELL, Justice.

The central issue before us in this case is whether an application for a search warrant provided a sufficient showing of probable cause to support the magistrate's finding of probable cause and issuance of the warrant. We conclude that it did and that the trial court did not err by denying the defendants' motions to suppress evidence seized pursuant to the search warrant. Therefore, we reverse the Court of Appeals' decision awarding the defendants a new trial.

Evidence for the State tended to show that in early February 1987, Detective Sergeant Lee Stevens of the Onslow County Sheriff's Department received information from a confidential informant that the defendant Bobby Riggs was selling marijuana. On 26 February 1987, this informant was searched and found not to possess any drugs, equipped with a listening device, issued money for a drug purchase, and observed by officers as he went to the home of an unwitting middleman trusted by Riggs. Officers then observed the middleman leave his home, where the informant remained, go to the premises of the defendants Bobby and Pamela Riggs, and return to his own home. The middleman then delivered the

marijuana to the informant, which the informant turned over to Sergeant Stevens.

Deputy Sheriff Boyce W. Floyd supervised the use of a different informant during a nearly identical transaction on 25 March 1987. On 27 March 1987, Deputy Floyd applied for and received a warrant to search the defendants and their premises. During the resulting search, officers found approximately one-half ounce of marijuana and approximately twenty items of drug paraphernalia, including "roach clips" and scales, in the defendants' residence. Thereafter, each of the defendants was indicted for the felony of possession of marijuana with intent to sell and deliver and for the misdemeanor of possession of drug paraphernalia.

Prior to trial the defendants moved, pursuant to the laws and the Constitution of North Carolina and the Constitution of the United States, to suppress the evidence obtained during the search of their residence on the ground that the search warrant was issued and the search was conducted without probable cause. During a pretrial hearing on the defendants' motions to suppress, the application for the search warrant, comprised in part of an affidavit by Deputy Floyd, was introduced into evidence. The affidavit stated in pertinent part that:

> A confidential [s]ource stated that to purchase marijuana from the above described residence the [s]ource would bring a subject who is known and trusted by Riggs to the driveway of the above described residence, there the subject would walk to the above described residence purchase the marijuana . . . return to the vehicle and deliver the marijuana to the [s]ource.

> On 3-25-87 [a]ffiant met with the [s]ource, the [s]ources [sic] vehicle and person was [sic] searched with no contraband being found. The [s]ource was issued $45.00 of Onslow County narcotics monies. The [s]ource thereafter was constanly [sic] under surveillance[;] the [s]ource then met with a [s]ubject known and trusted by Riggs, the [s]ource and this [s]ubject then traveled to the driveway of the above described residence, the [s]ource subsequently stated to affiant that at this point $45.00 was given to the subject and the [s]ubject walked down the driveway to the above described residence. Shorty [sic] thereafter the subject returned to the [s]ource's vehicle and the [s]ource stated that the subject delivered to the [s]ource appox. [sic] ¼ oz[.] of marijuana, the [s]ource then drove the [s]ubject a short

distance away and dropped the subject off. The [s]ource then came directly to affiant and turned over . . . appo. [sic] ¼ oz[.] of marijuana . . . .

This [s]ource is reliable in that this [s]ource knows what marijuana looks like and the information this [s]ource has given to affiant is [sic] always been found to be true and exact[.]

On 2-26-87 Deputy Sheriff L. S. Stevens and affiant searched a separate [s]ource of information and found no contraband. Deputy Stevens issued this [s]ource $45.00 and equiped [sic] the [s]ource with a liste[ning] device. The [s]ource was then followed by Deputy Stevens and affiant to a residence where the [s]ource gave a subject the $45.00. This subject was then followed to the above described residence and then back to the [s]ubjects [sic] residence where the [s]ubject delivered to the [s]ource appox [sic] ¼ oz. of marijuana. Deputy Sheriff Stevens [sic] [s]ource knows what marijuana looks like and has made 2 controlled purchases of narcotics in Onslow Co. for Deputy Stevens—and given information that has led to the arrest of 1 narcotics violat[or] . . . the information Deputy Steven's [sic] [s]ource has provided has always [been] found to be true and exact.

On 4-23-87 Bobby Riggs pled guilty to Felony Possession of Marijuana[.]

During his testimony at the pretrial hearing, Deputy Floyd stated that the informant he had used during the 25 March 1987 transaction described in his affidavit and application for the search warrant was not reliable. Deputy Floyd testified that the statement in his affidavit that the informant was reliable was a mistake. The magistrate who issued the search warrant testified that he had relied upon Deputy Floyd's statements in the affidavit that both of the sources were reliable in determining probable cause existed.

Following the pretrial hearing on the defendants' motions, the trial court concluded that "clearly probable cause was shown" and that "the search warrant was properly issued and properly executed." The trial court held that "the fruits of the search may be introduced in this case." Accordingly, the trial court denied the defendants' motions to suppress.

The defendants were tried before a jury. Each defendant was found guilty of the misdemeanors of simple possession of marijuana and possession of drug paraphernalia, and the trial court entered judgments sentencing the defendants. Pamela Riggs was sentenced for possession of drug paraphernalia to a term of one year of imprisonment, suspended upon the condition that she serve 60 days imprisonment and be placed on supervised probation for five years. She received a 30-day suspended sentence for simple possession of marijuana. Bobby Riggs was sentenced to a term of one year of imprisonment for possession of drug paraphernalia and to a 30-day suspended sentence for simple possession of marijuana. Both defendants appealed to the Court of Appeals.

The Court of Appeals held that the trial court had erred in denying the defendants' motion to suppress and awarded the defendants a new trial. The Court of Appeals concluded that Deputy Floyd's "affidavit did not provide a sufficient basis for the magistrate's issuance of the search warrant because there was no substantial basis for a finding of probable cause." 96 N.C. App. at 600, 386 S.E.2d at 602. In particular, that court emphasized that: "There was no statement in the affidavit that the drugs were purchased from the *defendants* in their *home." Id.* at 598, 386 S.E.2d at 601. For this reason, the Court of Appeals felt that the affidavit failed to establish probable cause to believe that contraband was present in the defendants' residence.

The Court of Appeals also noted statements by Deputy Floyd, during his testimony at the pretrial hearing on the defendants' motions to suppress, to the effect that he had mistakenly represented in his affidavit that the informant he used during the 25 March 1987 transaction was reliable. As a result, the Court of Appeals concluded that:

> Consequently, even if the affidavit had contained enough information to support a finding of probable cause, and we conclude that it did not, the magistrate's decision would have been based, in part, on incorrect information. . . . To allow magistrates to rely upon affidavits which are materially inaccurate would make a mockery of the rules which were enacted to protect the rights of citizens from unreasonable searches and seizures.

*Id.* at 600, 386 S.E.2d at 602.

This Court allowed the State's petition for discretionary review on 10 May 1990. We now reverse the decision of the Court of Appeals.

An "affidavit is sufficient if it supplies reasonable cause to believe that the proposed search for evidence probably will reveal the presence upon the described premises of the items sought and that those items will aid in the apprehension or conviction of the offender." *State v. Arrington*, 311 N.C. 633, 636, 319 S.E.2d 254, 256 (1984) (citing *State v. Riddick*, 291 N.C. 399, 230 S.E.2d 506 (1972)). The applicable test is

> whether, given all the circumstances set forth in the affidavit before [the magistrate], including "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of the reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed.

*Id.* at 638, 319 S.E.2d at 257-58 (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 76 L. Ed. 2d 527, 548 (1983)).

Deputy Floyd's affidavit tended to show that the informant used by Deputy Stevens on 26 February 1987 had made two prior controlled purchases of drugs and also previously had given accurate information which resulted in the arrest of a "narcotics violator." Such evidence established that informant's reliability.

[1] Any serious question as to the reliability of the informant involved in the 25 March 1987 purchase of marijuana described in Deputy Floyd's affidavit arose principally from his personal opinion concerning the definition of the term "reliable" as used in constitutional parlance. The search warrant application completed by Deputy Floyd states that: "This source is reliable *in that* this Source knows what marijuana looks like and the information this Source has given to the affiant is [sic] always been found to be true and exact." (Emphasis added.) The problems which arose during voir dire regarding this characterization of the informant as "reliable" were semantic rather than legal. It is clear from his testimony that Deputy Floyd incorrectly believed that the term "reliable" was a hypertechnical term of art, applicable in drug cases only to persons who had made at least two prior controlled purchases of illegal drugs. Because the informant had made only one such previous purchase, Deputy Floyd personally did not believe the

informant fell within this hypertechnical definition of the term "reliable." However, the officer's subjective belief does not control here; the defendants' rights "are governed by the law, rather than by the officers' misunderstanding of it." *State v. Coffey*, 65 N.C. App. 751, 758, 310 S.E.2d 123, 128 (1984); *see also United States v. Burnett*, 791 F.2d 64, 67-68 (6th Cir. 1986); *United States v. Tramontana*, 460 F.2d 464, 466-67 (2d Cir. 1972).

[2]  In showing that information is reliable for purposes of obtaining a search warrant, the State is not limited to certain narrowly defined categories or quantities of information. What is popularly termed a "track record" is only one method by which a confidential source of information can be shown to be reliable for purposes of establishing probable cause. The clearest illustration of this fact is found in *Illinois v. Gates*, 462 U.S. 213, 76 L. Ed. 2d 527 (1983), which has been accepted by this Court as setting the appropriate standard for showing probable cause under both the federal and state constitutions. *State v. Arrington*, 311 N.C. 633, 319 S.E.2d 254 (1984). In *Gates*, the Supreme Court of the United States indicated that "probable cause" is not a code phrase for any particular predetermined or required factual showing because "this area does not lend itself to a prescribed set of rules . . . ." 462 U.S. at 239, 76 L. Ed. 2d at 549. Instead, whether probable cause has been established is a "common sense, practical question" based on "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Id.* at 230-31, 235-36, 76 L. Ed. 2d at 543-44, 546. "[P]robable cause requires only *a probability or substantial chance* of criminal activity, not an actual showing of such activity." *Id.* at 243 n.13, 76 L. Ed. 2d at 552 n.13 (emphasis added).

In the affidavit forming part of the application for the search warrant, Deputy Floyd specifically qualified his statement that the informant was reliable as being based upon the fact that the information the informant had given in the past had been found to be true and exact. That statement by Deputy Floyd was true, even though his pretrial testimony indicated that the informant had given such information on only one prior occasion. Deputy Floyd's assertion in the warrant application that the informant was reliable cannot be construed as even marginally inaccurate, unless the word "reliable" is reduced to Deputy Floyd's hypertechnical definition requiring that the informant previously have given accurate and usable assistance in at least two drug

STATE v. RIGGS

[328 N.C. 213 (1991)]

cases. Clearly, such a construction is contrary to the unequivocal meaning of *Gates* and its progeny. *See generally State v. Cummings*, 326 N.C. 298, 389 S.E.2d 66 (1990); *State v. Beam*, 325 N.C. 217, 381 S.E.2d 327 (1989). Applying the nontechnical, common sense approach dictated by *Gates* and *Arrington* to the totality of circumstances in this case, it is clear that Deputy Floyd's affidavit did not state any material facts inaccurately.

The Court of Appeals also expressed the opinion that, even if all of the information in the warrant application was accurate, the two controlled purchases of marijuana by persons who had entered the defendants' driveway did not establish probable cause for the issuance of a warrant authorizing a search of the defendants' residence which the driveway served. The warrant application described the defendants' premises as follows:

> On Rt 1 Hubert, N.C. at the intersection of Bear Creek Road, Queens Creek Road and Great Neck Landing Road, . . . take the Great Neck Landing (state Road 1503) travel 2/10 of a mile to a dirt driveway to the left, travel 100 yards on the dirt driveway to a Mobil [sic] Home. . . . [T]o the left of the Mobil Home is a wooden unfinished shed at the edge of the trees also there will be numerous cars behind and to the left side of the Mobil Home.

From this description, it appears that the premises occupied by the defendants were of a nature fairly typical in rural areas of North Carolina.

Although apparently recognizing that the information before the magistrate was adequate to establish probable cause to believe that illegal drug transactions had occurred in the driveway on the defendants' premises, the Court of Appeals seems to have concluded that there was no probable cause to search their residence, because there was no direct evidence of the presence of contraband within its walls. 96 N.C. App. at 598, 386 S.E.2d at 601. However, the rule set forth in *Gates* is controlling and only requires that the magistrate make a practical, common sense determination whether, under all the circumstances, there is a fair probability that contraband or evidence will be found in the place to be searched. *Gates*, 462 U.S. at 238, 76 L. Ed. 2d at 548. Here, the evidence before the magistrate established a fair probability that contraband was located on the defendants' premises. Therefore, probable cause

was established supporting a warrant for a search of the premises, including the residence.

[3] Evidence before the magistrate tended to show that two different individuals had been able to secure drugs by sending an observed third party on the defendants' premises and that one of the transactions had occurred within the previous 48 hours. Therefore, it was reasonable for the magistrate to conclude that there was a fair probability or substantial chance that contraband was present in the defendants' residence. *See id.* at 243 n.13, 76 L. Ed. 2d at 552 n.13. The application for the search warrant did not specify the exact spot on the defendants' premises where the transactions occurred, nor was such a specification required. Reasonable inferences from the available observations, particularly when coupled with common or specialized experience, long have been approved in establishing probable cause. *See United States v. Cortez*, 449 U.S. 411, 66 L. Ed. 2d 621 (1981). A magistrate may "draw such reasonable inferences as he will from the material supplied to him by applicants for a warrant. . . ." *Gates*, 462 U.S. at 240, 76 L. Ed. 2d at 549.

Where, as here, information before a magistrate indicates that suspects are operating, in essence, a short-order marijuana drive-through on their premises, the logical inference is that a cache of marijuana is located somewhere on those premises; that inference, in turn, establishes probable cause for a warrant to search the premises, including the residence. As *Arrington* instructs:

> The affidavit is sufficient if it supplies reasonable cause to believe that the proposed search for evidence *probably* will reveal the presence upon the described premises of the items sought and that those items will aid in the apprehension or conviction of the offender. Probable cause does not mean actual and positive cause nor import absolute certainty. . . . A determination of probable cause is grounded in practical considerations.

311 N.C. at 636, 319 S.E.2d at 256 (citations omitted) (emphasis added). In addition, many other decisions of this Court and the Court of Appeals have found expressly that it is reasonable to infer that readily mobile contraband is kept at hand, whether in a dwelling, an outbuilding, or a vehicle. *See State v. Reid*, 286 N.C. 323, 210 S.E.2d 422 (1974) (search of car upheld without evidence it was present during surveillance or when officers obtained war-

STATE v. RIGGS

[328 N.C. 213 (1991)]

rant); *State v. Courtright*, 60 N.C. App. 247, 298 S.E.2d 740, *disc. rev. denied*, 308 N.C. 192, 302 S.E.2d 245 (1983) (warrant for home extends to vehicle on premises); *State v. Mavrogianis*, 57 N.C. App. 178, 291 S.E.2d 163, *disc. rev. denied*, 306 N.C. 562, 294 S.E.2d 227 (1982) (search of car in campus parking lot, though not specified in warrant for dormitory room, upheld as "natural repository").

Under the totality of the circumstances presented, the magistrate in the present case had a more than ample basis upon which to find probable cause to authorize a search of the defendants' residence. "A grudging or negative attitude by reviewing courts toward warrants," is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant; "courts should not invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner." *Gates*, 462 U.S. at 236, 76 L. Ed. 2d at 547 (quoting *United States v. Ventresca*, 380 U.S. 102, 109, 13 L. Ed. 2d 684, 689 (1965)). "[T]he resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Id.* at 237 n.10, 76 L. Ed. 2d at 547 n.10 (quoting same); *State v. Louchheim*, 296 N.C. 314, 324, 250 S.E.2d 630, 636, *cert. denied*, 444 U.S. 836, 62 L. Ed. 2d 47 (1979) (quoting same). While it remains true that the private residence is the most highly protected of all places under the Fourth Amendment, residents cannot claim unconditional sanctuary therein merely because they operate a drive-through drug service outside the residence rather than inviting their clientele inside.

The decision of the Court of Appeals, awarding the defendants a new trial on the ground that the trial court erred in denying their motions to suppress evidence seized pursuant to the search warrant in the present case, is reversed. This case is remanded to the Court of Appeals for further action not inconsistent with this opinion.

Reversed and remanded.