STATE OF NORTH CAROLINA v. TRAVARAS VASHAUN JACKSON

No. COA11-876

(Filed 17 April 2012)

**Criminal Law—motion for appropriate relief—evidentiary hearing required—summary denial erroneous**

The trial court erred by summarily denying defendant's motion for appropriate relief and an accompanying discovery motion in a drug case. Defendant's motion for appropriate relief raised issues of fact with sufficient particularity to merit an evidentiary hearing and the trial court erred by failing to conduct a hearing so that defendant would have an opportunity to produce evidence to substantiate his allegations.

Appeal by writ of *certiorari* review of the order denying Defendant's motion for appropriate relief entered 15 November 2010 by Judge Arnold O. Jones, II, in Wayne County Superior Court. Heard in the Court of Appeals 15 December 2011.

*Attorney General Roy Cooper, by Assistant Attorney General Kathleen N. Bolton, for the State.*

*North Carolina Prisoner Legal Services, by D. Tucker Charns, for Defendant-appellant.*

ERVIN, Judge.

1

**STATE v. JACKSON**

[220 N.C. App. 1 (2012)]

Defendant Travaras Vashaun Jackson appeals from an order denying his motion for appropriate relief and related discovery motion. On appeal, Defendant argues that the trial court erred by summarily denying his motion for appropriate relief and an accompanying discovery motion. After careful consideration of Defendant's challenges to the trial court's order in light of the record and the applicable law, we conclude that the trial court's order should be reversed and that this case should be remanded to the Wayne County Superior Court for further proceedings not inconsistent with this opinion.

## I.  Background

### A.  Substantive Facts

On 23 October 2006, Sergeants Dan Peters of the Wayne County Drug Squad and Seth Harris of the Goldsboro Police Department gave an unidentified informant $25.00 for use in making a controlled drug purchase at an apartment located in Goldsboro. The informant claimed to have gone to the apartment, returned with a bag of white powder, and told the officers that an unidentified black male in the apartment had stated that the powder was cocaine. At that point, Sergeant Harris prepared and executed an affidavit, with which he obtained the issuance of a warrant authorizing a search of the apartment. In the affidavit, Sergeant Harris stated that:

> The applicant states that he has a confidential source which[] is also known to Sgt. D. Peters of the Goldsboro Police Department, that has proven reliable in the past to the applicant by providing information in the past that has led to the seizure of a controlled substance in Wayne County. On October 23, 2006 the source told the applicant that the source was inside the above mentioned residence [within] the past 48 hours and had seen a quantity of off white powder substance that was represented to be cocaine by a black male and in the possession of the black male while inside the residence listed above. The source has in the past provided information to the applicant that has led to the seizure of controlled substances, therefore the applicant knows that the source knows cocaine when the source sees it.

Later that day, Sergeant Harris, Sergeant Peters, and other law enforcement officers executed the search warrant. The officers knocked on the apartment door and, after failing to receive a response, used a battering ram to force an entry into the apartment. When the officers entered, Defendant, who was immediately inside

**STATE v. JACKSON**

[220 N.C. App. 1 (2012)]

the door, ran towards a bathroom. Sergeant Peters pursued Defendant and retrieved a plastic bag from the toilet bowl before Defendant had a chance to dispose of it. The plastic bag held three other bags that appeared to contain controlled substances. The officers handcuffed Defendant, searched the apartment and Defendant, and seized various items, including Defendant's identification cards, which were discovered in the bedroom; an apartment key, which was removed from Defendant's pocket; and an electric bill identifying Heather Seagraves, who arrived toward the end of the search, as the individual in whose name utility service was provided to the apartment.

After executing the search warrant, Sergeant Harris arrested Defendant and took him to the Goldsboro Police Department. After Sergeant Harris informed Defendant of his *Miranda* rights, Defendant agreed to answer questions without invoking his right to the assistance of counsel. In a written statement that Sergeant Harris prepared and Defendant signed, Defendant stated that:

> The bag of drugs I was trying to hide today were mine and nobody else's. There was crack, [cocaine] powder and ecstasy in that bag. It had to be 5 or 6 grams of crack, 3 or 4 grams of powder, and 10 or 15 pills. I've been selling drugs out of that apartment since about June of this year. I make an average of about 300 [] or 400 dollars a day. My girl knows I sell drugs, but she doesn't get involved with it. She's not even there during the daytime. She doesn't know what I do when she's not there.

Chemical testing performed by the State Bureau of Investigation indicated that the plastic bag retrieved from the toilet held 3.3 grams of 3,4 methylenedioxymethamphetamine, more commonly known as MDMA or ecstasy; 3.6 grams of cocaine hydrochloride powder; and 6.3 grams of cocaine base.

## B. Procedural History

On 6 August 2007, a Wayne County grand jury returned bills of indictment charging Defendant with possession of cocaine with the intent to sell and deliver, possession of MDMA with the intent to sell and deliver, possession of marijuana with the intent to sell and deliver, maintaining a dwelling for the purpose of using controlled substances, and having attained the status of an habitual felon. On 14 March 2008, Defendant filed a motion seeking the suppression of the evidence seized during the search of the apartment. Defendant argued, among other things, that the affidavit submitted in support of

the application for the issuance of the search warrant contained statements that "were in violation of the principle set forth in *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978)," and also filed a motion seeking the disclosure of the identity of the alleged informant.

The charges against Defendant came on for trial before Judge Jerry Braswell and a jury at the 17 March 2008 criminal session of Wayne County Superior Court. After denying Defendant's suppression motion on the grounds that no affidavit had been attached to the motion and that Defendant had failed to show standing to challenge the search of the apartment, Judge·Braswell allowed Defendant to examine Sergeant Harris concerning the extent to which there was any additional discoverable evidence that had not been provided to Defendant as of that date. In response to Defendant's questions, Sergeant Harris testified that: (1) he had never worked with the informant before the date upon which he sought the issuance of the search warrant; (2) when the informant returned with the white powder, the officers did not remove it from the bag, smell it, field test it, or otherwise attempt to identify the substance; and (3) although Sergeant Harris "understood" that the informant was a former drug user, he did not know if the informant had a criminal record or was knowledgeable about the drug trade. After hearing this testimony and engaging in a further colloquy with counsel, the trial court denied Defendant's request for a continuance and a dismissal of the pending charges, both of which were predicated on Defendant's need to interview the alleged informant and alleged discovery violations.

At the conclusion of the evidence, Judge Braswell dismissed the charge of possession of marijuana with the intent to sell and deliver. The jury returned verdicts convicting Defendant of possession of cocaine with the intent to sell and deliver and possession of MDMA with the intent to sell or deliver. However, the jury was unable to reach a unanimous verdict with respect to the issue of Defendant's guilt of maintaining a dwelling for the use of controlled substances, leading the trial court to declare a mistrial with respect to that charge. After the required separate hearing, the jury found that Defendant had attained habitual felon status. Based upon the jury's verdicts, Judge Braswell entered judgments sentencing Defendant to two consecutive terms of 85 to 111 months imprisonment. Although Defendant noted an appeal to this Court from Judge Braswell's judgments, this Court filed an opinion on 5 May 2009 finding no error in

the proceedings leading to the entry of Judge Braswell's judgments. *State v. Jackson,* 196 N.C. App. 790, 675 S.E.2d 720 (2009) (unpublished).

On 8 June 2010, Defendant filed a motion for appropriate relief in which he alleged that:

> [Defendant]'s motion to suppress was denied because trial counsel failed to file a statutorily required affidavit with the motion. Therefore, trial counsel was ineffective. In the alternative, to the extent appellate counsel was required to allege ineffective assistance of counsel on direct appeal, appellate counsel was also ineffective.

In addition, Defendant moved "pursuant to N.C. Gen. Stat. § 15A-1415(f) for discovery of the complete files of all law enforcement and prosecutorial agencies involved in the investigation of the crimes committed, or the prosecution of, the Defendant." After a hearing held on 3 November 2010, the trial court entered an order summarily denying Defendant's motions for appropriate relief and discovery on 15 November 2010. In its order, the trial court stated that:

1.  The Affidavit supporting the search warrant at issue did not contain "false statements" under the theory argued by the Defendant;

2.  Even in the absence of a supporting Affidavit, the trial judge nevertheless fairly considered the arguments requested within this Motion and rejected them;

3.  The Defendant has failed to adequately show that trial counsel's actions in failing to file an Affidavit prejudiced his defense;

4.  A determination that this Motion for Appropriate Relief is without merit can be determined on the face of the record and, therefore, the Defendant's Motion for additional discovery is moot.

On 14 January 2011, this Court granted Defendant's request for *certiorari* review of the trial court's order.

## II.  Legal Analysis

### A.  Standards of Review

#### 1.  Motion for Appropriate Relief

##### a.  Entitlement to Evidentiary Hearing

N.C. Gen. Stat. § 15A-1420(c) provides, in pertinent part, that, when a defendant files a motion for appropriate relief:

(1)  Any party is entitled to a hearing on questions of law or fact arising from the motion . . . unless the court determines that the motion is without merit. The court must determine, on the basis of these materials and the requirements of this subsection, whether an evidentiary hearing is required to resolve questions of fact.

. . .

. . .

(3)  The court must determine the motion without an evidentiary hearing when the motion and supporting and opposing information present only questions of law. . . .

(4)  If the court cannot rule upon the motion without the hearing of evidence, it must conduct a hearing for the taking of evidence, and must make findings of fact. . . .

As a result, N.C. Gen. Stat. "§ 15A-1420(c)(1) requires that 'the court must [initially] determine . . . whether an evidentiary hearing is required to resolve questions of fact.' If the trial court 'cannot rule upon the motion without the hearing of evidence, it must conduct a hearing for the taking of evidence, and must make findings of fact.' N.C.G.S. § 15A-1420(c)(4). Under subsection (c)(4), read in *pari materia* with subsections (c)(1), (c)(2), and (c)(3), an evidentiary hearing is required unless the motion presents assertions of fact which will entitle the defendant to no relief even if resolved in his favor, or the motion presents only questions of. law[.]" *State v. McHone*, 348 N.C. 254, 258, 499 S.E.2d 761, 763 (1998). Thus, the ultimate question that must be addressed in determining whether a motion for appropriate relief should be summarily denied is whether the information contained in the record and presented in the defendant's motion for appropriate relief would suffice, if believed, to support an award of relief.

### b.  Procedural Default

According to N.C. Gen. Stat. § 15A-1419(a)(3), a motion for appropriate relief must be denied in the event that, in "a previous appeal the defendant was in a position to adequately raise the ground or issue underlying the present motion but did not do so." N.C. Gen. Stat. § 15A-1419 " 'is not a general rule that any claim not brought on direct appeal is forfeited on state collateral review. Instead, the rule requires North Carolina courts to determine whether the particular claim at issue could have been brought on direct review.' " *State v. Thompson*, 359 N.C. 77, 122, 604 S.E.2d 850, 881 (2004) (quoting *State v. Fair*, 354 N.C. 131, 166, 557 S.E.2d 500, 525 (2001), *cert. denied*, 535 U.S. 1114, 122 S. Ct. 2332, 153 L. Ed. 2d 162 (2002)) (internal citation omitted), *cert. denied*, 546 U.S. 830, 126 S. Ct. 48, 163 L. Ed. 2d 80 (2005). For that reason, "ineffective assistance of counsel claims 'brought on direct review will be decided on the merits [only] when the cold record reveals that no further investigation is required, *i.e.*, claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing.' " *Thompson*, 359 N.C. at 122-23, 604 S.E.2d at 881 (quoting *Fair*, 354 N.C. at 166, 557 S.E.2d at 524. As the Supreme Court has clearly noted:

> "It is not the intention of this Court to deprive criminal defendants of their right to have [ineffective assistance of counsel] claims fully considered. Indeed, because of the nature of [ineffective assistance of counsel] claims, defendants likely will not be in a position to adequately develop many [ineffective assistance of counsel] claims on direct appeal. Nonetheless, to avoid procedural default under N.C. [Gen. Stat.] § 15A-1419(a)(3), defendants should necessarily raise those [ineffective assistance of counsel] claims on direct appeal that are apparent from the record."

*Thompson*, at 123, 604 S.E.2d at 881 (quoting *Fair*, at 167, 557 S.E.2d at 525).

### c.  Review of Order Deciding a Motion for Appropriate Relief

"We review a trial court's ruling on a motion for appropriate relief 'to determine whether the findings of fact are supported by evidence, whether the findings of fact support the conclusions of law, and whether the conclusions of law support the order entered by the trial court.' 'When a trial court's findings on a motion for appropriate relief are reviewed, these findings are binding if they are supported by com-

petent evidence and may be disturbed only upon a showing of manifest abuse of discretion.' " *State v. Taylor*, ___ N.C. App ___, ___, 713 S.E.2d 82, 86, *disc. review denied*, ___ N.C. ___, 717 S.E.2d 558 (2011) (quoting *State v. Stevens*, 305 N.C. 712, 720, 291 S.E.2d 585, 591 (1982), and *State v. Lutz*, 177 N.C. App. 140, 142, 628 S.E.2d 34, 35 (2006) (internal citations omitted)). " 'As a general rule[,] . . . any determination requiring the exercise of judgment, or the application of legal principles, is more properly classified a conclusion of law.' " *Wiseman Mortuary, Inc. v. Burrell*, 185 N.C. App. 693, 697, 649 S.E.2d 439, 442 (2007) (quoting *In re Everette*, 133 N.C. App. 84, 85, 514 S.E.2d 523, 525 (1999)). Thus, the four justifications provided for the summary denial of Defendant's motion for appropriate relief by the trial court were, in actuality, conclusions of law. "We will review conclusions of law *de novo* regardless of the label applied by the trial court." *Zimmerman v. Appalachian State Univ.*, 149 N.C. App. 121, 131, 560 S.E.2d 374, 380 (2002) (citing *Carpenter v. Brooks*, 139 N.C. App. 745, 752, 534 S.E.2d 641, 646, *disc. review denied*, 353 N.C. 261, 546 S.E.2d 91 (2000)). If "the issues raised by Defendant's challenge to [the trial court's] decision to deny his motion for appropriate relief are primarily legal rather than factual in nature, we will essentially use a *de novo* standard of review in evaluating Defendant's challenges to [the court's] order." *Taylor*, ___ N.C. App at ___, 713 S.E.2d at 86.

### 2.  Ineffective Assistance of Counsel

"To make a successful ineffective assistance of counsel claim, a defendant must show that (1) defense counsel's 'performance was deficient,' and (2) 'the deficient performance prejudiced the defense.' Counsel's performance is deficient when it falls 'below an objective standard of reasonableness.' Deficient performance prejudices a defendant when there is 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *State v. Waring*, 364 N.C. 443, 502, 701 S.E.2d 615, 652 (2010) (quoting *Strickland v. Washington*, 466 U.S. 668, 687-88, 694, 104 S. Ct. 2052, 2064-65, 2068, 80 L. Ed. 2d 674, 693-94, 698 (1984) (other citation omitted), *cert. denied*, ___ U.S. ___, 132 S. Ct. 132, 181 L. Ed. 2d 53 (2011).

### B.  Substantive Legal Analysis

### 1.  Default

As an initial matter, we must address the State's claim that "Defendant is procedurally barred from claiming ineffective assis-

tance of trial counsel." In seeking to persuade us of the validity of this contention, the State essentially argues that Defendant was in a position to raise his challenge to the effectiveness of the assistance that he received from his trial counsel on direct appeal. We do not find this argument persuasive.

As we have already noted, ineffective assistance of counsel claims must be asserted on direct appeal "if the record is adequately developed to resolve the claim without ancillary proceedings." In his motion for appropriate relief, Defendant alleged that his trial counsel provided him with deficient representation by failing to attach to the suppression motion an affidavit which set out the basis for his claim to have standing to contest the search of the apartment and establishing a valid basis for suppressing the challenged evidence as required by N.C. Gen. Stat. § 15A-977(a). According to the State, no ancillary proceedings needed to be held in order to establish that Defendant's trial counsel failed to file the required affidavit, thus demonstrating that Defendant should have raised his ineffectiveness claim on direct appeal. The State's analysis is, however, incomplete.

A successful ineffectiveness claim requires proof both that the representation that the defendant received was deficient and that the deficient representation prejudiced the defendant. Although establishing that Defendant's trial counsel failed to file an affidavit along with the suppression motion might, without more, demonstrate that Defendant received deficient representation from his trial counsel, such a showing does not adequately address the prejudice issue. In order to establish the necessary prejudice, Defendant was required to show that, had the required affidavit been filed, he would have been able to establish that he had standing to challenge the search of the apartment and that the available facts would have supported suppression of the challenged evidence. The record before this Court at the time of Defendant's direct appeal did not contain sufficient information to permit the Court to address both prongs of the required prejudice analysis.

"A defendant has standing to contest a search if he or she has a reasonable expectation of privacy in the property to be searched." *State v. McKinney*, 361 N.C. 53, 56, 637 S.E.2d 868, 871 (2006) (citing *State v. Mlo*, 335 N.C. 353, 378, 440 S.E.2d 98, 110-11, *cert denied*, 512 U.S. 1224, 114 S. Ct. 2716, 129 L. Ed. 2d 841 (1994)). "A person who . . . actually lives in the area searched has standing." *State v. Swift*, 105 N.C. App. 550, 556, 414 S.E.2d 65, 69 (1992) (citing *Minnesota v. Olson*, 495 U.S. 91, 100, 110 S. Ct. 1684, 1690, 109 L. Ed. 2d 85,

95 (1990)). The fact that the defendant is not married to the other occupant of a particular residence does not deprive him of standing to challenge a search of the place where he lives. *See State v. Austin*, 320 N.C. 276, 289, 357 S.E.2d 641, 649 (defendant had standing to challenge the search of a house where "joint rent receipts had in the past been issued to defendant and . . . defendant had resided there for five or six years, keeping all of his clothes there, eating and sleeping there, working in the yard, planting a garden, and receiving his mail there"), *cert. denied*, 484 U.S. 916, 108 S. Ct. 267, 98 L. Ed. 2d 224 (1987), and *Kentucky v. King*, ___ U.S.___ , ___ n1, 131 S. Ct. 1849, 1854 n1, 179 L. Ed. 2d 865, 873 n1 (2011) (noting that, while "[r]espondent's girlfriend leased the apartment," "respondent stayed there part of the time, and his child lived there" and that, "[b]ased on these facts, [the State had] conceded in state court that respondent has Fourth Amendment standing to challenge the search"). *See also, e.g.*, *United States v. Wright*, 525 F. Supp. 2d 328, 335 (W.D.N.Y. 2007) (stating that "defense testimony from [the defendant's] fiancée . . . established that he lived and slept in that apartment at the time of the search," providing "sufficient proof to give defendant standing to contest this search."), and *United States v. Schuster*, 717 F.2d 537, 541 n1 (11 Cir. 1983) (stating that "[t]he apartment actually belonged to [defendant's] girlfriend, but there is no dispute as to [defendant's] standing to contest the search since he resided there."), *cert denied*, 465 U.S. 1010, 104 S. Ct. 1008, 79 L. Ed. 2d 239 (1984).

At the hearing held concerning Defendant's suppression motion prior to trial, the State argued that Defendant lacked standing to challenge the search of the apartment in which he had been arrested. In the course of discussing the issue of standing, Judge Braswell and Defendant's trial counsel engaged in the following colloquy:

> THE COURT: Well, in looking at your memorandum in support of your motion to suppress, I'm just wondering how it is that Mr. Jackson has standing to quash a search warrant [] on an apartment that he hasn't alleged was his.
>
> [DEFENSE COUNSEL]: You know, that's a good question, your Honor.
>
> THE COURT: I'm looking for a good answer. . . . because at this point the burden of proof is on the Defendant.

Aside from the fact that Defendant failed to articulate any basis for a determination that he had standing to challenge the search of the apartment prior to the denial of his suppression motion, the record

developed at trial did not suffice to show that Defendant had the required standing. More particularly, the State introduced evidence that, at the time that the search warrant was executed, Defendant had a key to the apartment in his pocket. In addition, two identification cards bearing Defendant's name were found in the bedroom. An electric bill found in the apartment was addressed to Ms. Seagraves. Although Defendant told Sergeant Harris that he had been "selling drugs out of that apartment" for several months, the record did not contain any evidence tending to show that Defendant lived in the apartment. For that reason, Defendant moved for dismissal of the maintaining a dwelling for the purpose of using controlled substances charge on the grounds that there was insufficient evidence that he "maintained" the dwelling in question. Thus, we conclude that the evidence contained in the trial record did not provide Defendant's appellate counsel with sufficient information to permit Defendant to show standing and that this deficiency in the record precluded Defendant from successfully asserting his ineffective assistance of trial counsel claim on direct appeal. As a result, we conclude that Defendant was not procedurally barred from challenging his trial counsel's failure to attach an affidavit to the suppression motion in a motion for appropriate relief filed after the conclusion of the direct appeal process.

## 2. Summary Denial of Motion for Appropriate Relief

Next, we must determine whether the trial court erred by summarily denying Defendant's motion for appropriate relief. In order to make that determination, we must ascertain whether Defendant made an adequate showing in his motion and supporting documentation that he was entitled to prevail on his ineffective assistance of trial counsel claim. In order to make the required showing, Defendant was required to demonstrate the ability to show both that he received deficient representation from his trial counsel and that he was prejudiced by this deficient representation. As a result of the fact that the State has not contended that the failure of Defendant's trial counsel to attach an affidavit to his suppression motion did not constitute an adequate showing of deficient representation, the ultimate issue that we must address in order to determine whether the trial court correctly denied Defendant's motion for appropriate relief without a hearing is whether Defendant forecast adequate evidence of prejudice.

a. Standing

The first of the prejudice-related showings that Defendant was required to make in order to avoid summary denial of his motion for appropriate relief was that he had standing to challenge the search of the apartment. We believe that the evidentiary showing made in Defendant's motion for appropriate relief adequately demonstrated that Defendant had the ability to show that he had standing to contest the challenged search.

A careful review of the affidavit submitted in support of Defendant's motion for appropriate relief tends to show that Defendant lived in the apartment with Ms. Seagraves and their daughter. Ms. Seagraves stated in her affidavit that:

> 2) On October 23, 2006, Travaras Jackson and I were living together in our apartment at 108 S. Berkeley Blvd. Apt A3 ("the apartment") in Goldsboro, North Carolina. . . .

> 3) Travaras and I have two daughters together. Our first daughter, Destiny Jackson, was born May 19, 2005.

> . . . .

> 5) I recall signing the lease for the apartment and setting up utilities for the apartment in my name only around the beginning of 2006.

> 6) A few weeks after Destiny and I had settled in at the apartment, Travaras moved in with me on a permanent basis because I really needed his help caring for, and raising Destiny.

> 7) From the time he moved into the apartment to the time he was arrested in this case, Travaras only lived with me and only slept at the apartment. We never bothered to put Travaras's name on the lease or on any of our utility bills because this would have been an unnecessary hassle. Travaras helped me pay the rent and bills; he had a key to the apartment; and he kept all of his personal belongings at the apartment.

> 8) Travaras and I always considered the apartment to be a home we shared together with our daughter as a family.

After reviewing Ms. Seagraves' affidavit, we conclude that Defendant forecast ample evidence tending to show that he lived in the apartment and, thus, had standing to challenge the search of the apartment. As a result, the trial court could not have summarily denied

Defendant's motion for appropriate relief based on a failure to make an adequate preliminary showing of standing.

### b. Validity of Search Warrant

Secondly, we must determine whether Defendant forecast sufficient evidence to support a finding that the search of the apartment violated his right to be free from unreasonable searches and seizures as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Section 20 of the North Carolina Constitution. In attempting to make the required showing, Defendant argues that the affidavit executed by Officer Harris contained false statements made in bad faith and that, in the event that the affidavit was redacted in such a manner as to remove these false statements, the affidavit did not suffice to support the required determination of probable cause. After carefully reviewing the record, we believe that Defendant made a sufficient showing of prejudice to preclude summary denial of his motion for appropriate relief and that the trial court erred by reaching a contrary conclusion.

### i. General Legal Principles Relating to Search Warrants

"The requirement that a search warrant be based on probable cause is grounded in both constitutional and statutory authority. U.S. Const. amend. IV; N.C.G.S. § 15A-244 (1988). Probable cause for a search is present where facts are stated which establish reasonable grounds to believe a search of the premises will reveal the items sought and that the items will aid in the apprehension or conviction of the offender." *State v. Fernandez*, 346 N.C. 1, 13, 484 S.E.2d 350, 358 (1997) (citing *State v. Arrington*, 311 N.C. 633, 636, 319 S.E.2d 254, 256 (1984)).

> An "affidavit is sufficient if it supplies reasonable cause to believe that the proposed search for evidence probably will reveal the presence upon the described premises of the items sought and that those items will aid in the apprehension or conviction of the offender." The applicable test is "whether, given all the circumstances set forth in the affidavit before [the magistrate], including "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of the reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed."

*State v. Riggs,* 328 N.C. 213, 218, 400 S.E.2d 429, 432 (1991) (quoting *Arrington,* 311 N.C. at 636, 638, 319 S.E.2d at 257-58 (quoting *Illinois v. Gates,* 462 U.S. 213, 238, 103 S. Ct. 2317, 2332, 76 L. Ed. 2d 527, 548 (1983)). "In applying the [relevant legal standard, the] Court also found the principles underlying *Aguilar [v. Texas,* 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964)] and *Spinelli [v. United States,* 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969)], mainly that evidence is needed to show indicia of reliability, to be important components in determining the totality of the circumstances." *State v. Hughes,* 353 N.C. 200, 204, 539 S.E.2d 625, 628 (2000).

"When probable cause is based on an informant's tip[,] a totality of the circumstances test is used to weigh the reliability or unreliability of the informant. Several factors are used to assess reliability including: '(1) whether the informant was known or anonymous, (2) the informant's history of reliability, and (3) whether information provided by the informant could be and was independently corroborated by the police.' " *State v. Green,* 194 N.C. App. 623, 627, 670 S.E.2d 635, 638 (quoting *State v. Collins,* 160 N.C. App. 310, 315, 585 S.E.2d 481, 485 (2003), *aff'd* 358 N.C. 135, 591 S.E.2d 518 (2004)), *aff'd* 363 N.C. 620, 683 S.E.2d 208 (2009). The reliability of an informant who supplied information utilized to support the issuance of a search warrant has often been "established by showing that the informant had been used previously and had given reliable information, that the information given was against the informant's penal interest, that the informant demonstrated personal knowledge by giving clear and precise details in the tip, or that the informant was a member of a reliable group such as the clergy." *Hughes,* 353 N.C. at 203, 539 S.E.2d at 628. Thus:

> Courts have looked to a number of factors in determining whether the magistrate had a substantial basis for finding probable cause. One factor is whether the magistrate made reasonable inferences based on his experience, " 'particularly when coupled with common or specialized experience.' " This Court has also found a substantial basis when an investigating officer's supporting affidavit contained factual allegations that he conducted surveillance of "defendant's house, [and] he saw many people visiting the house for a short time and witnessed several hand-to-hand transactions between defendant and visitors to his house." Additionally, the procedure followed for a controlled purchase by a CI and alleged in sufficient detail has been deemed to provide a substantial basis to support an officer's affidavit.

*State v. Taylor*, 191 N.C. App. 587, 590, 664 S.E.2d 421, 423 (2008) (quoting *Riggs*, 328 N.C. at 221, 400 S.E.2d at 434, and *State v. Stokley*, 184 N.C. App. 336, 341, 646 S.E.2d 640, 644 (2007), *disc. rev. denied*, 362 N.C. 243, 660 S.E.2d 542 (2008), and citing *State v. Johnson*, 143 N.C. App. 307, 311, 547 S.E.2d 445, 448 (2001)).

"It is elementary that the Fourth Amendment's requirement of a factual showing sufficient to constitute 'probable cause' anticipates a truthful showing of facts." *Fernandez*, 346 N.C. at 13, 484 S.E.2d at 358 (citing *Franks v. Delaware*, 438 U.S. 154, 164-65, 98 S. Ct. 2674, 2681, 57 L. Ed. 2d 667, 677-78 (1978)). "*Franks* held that where a search warrant is issued on the basis of an affidavit containing false facts which are necessary to a finding of probable cause, the warrant is rendered void, and evidence obtained thereby is inadmissible if the defendant proves, by a preponderance of the evidence, that the facts were asserted either with knowledge of their falsity or with a reckless disregard for their truth." *Fernandez*, 346 N.C. at 13, 484 S.E.2d at 358) (citing *Franks*, 438 U.S. at 155-56, 98 S. Ct. at 2676, 57 L. Ed. 2d at 672 (other citation omitted). We will now utilize these principles to determine whether Defendant made a sufficient showing of prejudice in his motion for appropriate relief.

### ii.  Sufficiency of Defendant's Showing

### (a).  False Statements

In his motion for appropriate relief, Defendant alleged that the affidavit supporting the issuance of a search warrant contained false statements made in bad faith or in reckless disregard for the truth and that, in the event that such statements were to be redacted, the remaining statements in the affidavit did not suffice to support a finding of probable cause. After carefully reviewing the record, we conclude that the showing made by Defendant's motion for appropriate relief with respect to these issues was sufficient to preclude summary denial of Defendant's motion.

As we have already noted, Officer Harris asserted in the affidavit submitted in support of his application for the issuance of a search warrant that:

> The applicant states that he has a confidential source which[] is also known to Sgt. D. Peters of the Goldsboro Police Department, that has proven reliable in the past to the applicant by providing information in the past that has led to the seizure of a controlled substance in Wayne County. On October 23, 2006 the source told

the applicant that the source was inside the above mentioned residence [within] the past 48 hours and had seen a quantity of off white powder substance that was represented to be cocaine by a black male and in the possession of the black male while inside the residence listed above. The source has in the past provided information to the applicant that has led to the seizure of controlled substances, therefore the applicant knows that the source knows cocaine when the source sees it.

However, as we have also noted, Officer Harris testified under questioning by Defendant's trial counsel that (1) the only time he worked with the informant was the day he sought a search warrant; (2) after the informant returned with white powder, the officers did not examine the powder, remove it from the bag, smell it, field test it, or make any other attempt to identity the powder; and (3) Officer Harris had no information about the informant's personal history or previous interactions with the criminal justice system. An accurate depiction of Officer Harris' limited interactions with the informant would have tended to undermine his assertions that the informant "has proven reliable in the past to the applicant by providing information in the past that has led to the seizure of a controlled substance;" that the informant "has in the past provided information to the applicant that has led to the seizure of controlled substances;" and that Officer Harris "knows that the source knows cocaine when the source sees it."

Although the trial court concluded as a matter of law that the affidavit executed by Officer Harris "did not contain 'false statements' under the theory argued by the Defendant," we are unable to concur in this determination after conducting the *de novo* examination required by the applicable standard of review. A claim that an informant "has proven reliable in the past to the applicant by providing information in the past that has led to the seizure of a controlled substance" clearly suggests that, on at least one occasion prior to the incident underlying the case before the court, the informant had provided truthful information. However, Officer Harris' testimony clearly showed that he had not had any sort of prior relationship with the informant and knew little or nothing about him. Admittedly, "courts should not invalidate warrants by interpreting affidavits in a hypertechnical, rather than a commonsense, manner." *Riggs*, 328 N.C. at 222, 400 S.E.2d at 434-35 (quoting *Gates*, 462 U.S. at 236, 76 L. Ed. 2d at 547, 103 S. Ct. 2331 (alterations in original)). However, we believe that acceptance of the State's contention that Officer Harris' statements concerning the informant's reliability were accurate because

the single interaction between Officer Harris and the informant had occurred before Officer Harris applied for the issuance of a warrant to search the apartment requires us to put an interpretation upon the language used by Officer Harris which it will not reasonably bear. Thus, Defendant's motion for appropriate relief amply tended to show that the affidavit submitted in support of the application for a warrant to search the apartment contained false statements.

### (b).  Bad Faith

In addition, we believe that the record contains adequate evidence to support further inquiry into the "bad faith" issue. Although we recognize that, for purposes of evaluating the validity of a *Franks* claim, "[t]ruthful . . . 'does not mean . . . that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily,' " *Fernandez* at 13, 484 S.E.2d at 358 (quoting *Franks*, 438 U.S. at 165, 57 L. Ed. 2d at 678, 98 S. Ct. at 2681), the challenged facts all involved matters of which Officer Harris had personal knowledge. For example, Officer Harris knew that he had never worked with the informant before and did not, for that reason, have any basis for evaluating the informant's veracity apart from the single occasion upon which the request to search the apartment rested. The statement in the affidavits concerning the informant's prior actions did not involve facts that, although asserted in good faith, later turned out to be erroneous. Instead, the statements in question could be understood to involve assertions that Officer Harris knew to be inaccurate or knew would be understood in a manner that conflicted with the actual facts, thereby permitting an inference that Officer Harris did not act in good faith at the time that he executed the affidavit used to support the issuance of the search warrant. Thus, Defendant's motion for appropriate relief provided ample basis for a finding that a *Franks* violation occurred.

### (c).  Sufficiency of a Redacted Affidavit

As we have already noted, the final step in the analysis required under *Franks* and its progeny is to examine the affidavit submitted in support of the search warrant after the impermissible statements have been redacted for the purpose of determining whether that affidavit, considered without the information deemed to be inaccurate, would have supported a finding that probable cause to search the apartment existed. After deleting the apparently inaccurate informa-

tion contained in the relevant affidavit, we believe that a valid affidavit would have read something like the following:

> The applicant states that he has a confidential source which is also known to Sgt. D. Peters of the Goldsboro Police Department. On October 23, 2006 the source told the applicant that the source was inside the above mentioned residence within the past 48 hours and had seen a quantity of off white powder substance that was represented to be cocaine by a black male and in the possession of the black male while inside the residence listed above.

As should be apparent, such a redacted affidavit would include no information tending to support a finding that the informant was reliable.

In its brief, the State argues that a properly redacted affidavit would suffice to permit a finding of probable cause. In support of this contention, the State cites our decision in *State v. Smothers*, 108 N.C. App. 315, 318-19, 423 S.E.2d 824, 826 (1992). However, in *Smothers:*

> the information supplied by the informant established that he had been in defendant's residence during the previous seventy-two hours and that he had personally observed a box containing "a bunch" of small bags of white powder and . . . had personally observed defendant and others using cocaine by heating it and then snorting it through a straw[.] . . . The informant stated that he had personal knowledge of the appearance of cocaine and marijuana because a relative previously used these drugs.

> In addition . . . the affiant, Lieutenant Anderson, personally spoke with a second individual who . . . verified that the informant entered defendant's residence . . . [and that the] informant stated to him that he had seen cocaine and marijuana in the residence and had been offered cocaine by defendant. . . . Lieutenant Anderson verified that defendant resides at the home in question by checking the address listed with the North Carolina Department of Motor Vehicles on defendant's driver's license. Further, the affidavit recites that the officer has received information in the past from other citizens living near defendant's residence concerning an unusual amount of traffic going to and from defendant's residence at all hours of the day and night.

As a result, the affidavit at issue in *Smothers* contains a wealth of information and corroborative detail that does not appear in the affi-

davit before the Court in this case. In addition, the State relies on *Riggs,* 328 N.C. at 218, 221, 400 S.E.2d at 432, 434, in support of its contention that a properly redacted affidavit would adequately support the issuance of the challenged search warrant. In *Riggs,* however:

> Deputy Floyd's affidavit tended to show that the informant used by Deputy Stevens on 26 February 1987 had made two prior controlled purchases of drugs and also previously had given accurate information which resulted in the arrest of a "narcotics violator." Such evidence established that informant's reliability. . . . Evidence before the magistrate [also] tended to show that two different individuals had been able to secure drugs by sending an observed third party on the defendants' premises and that one of the transactions had occurred within the previous 48 hours. Therefore, it was reasonable for the magistrate to conclude that there was a fair probability or substantial chance that contraband was present in the defendants' residence.

As was the case in *Smothers,* the affidavit at issue in *Riggs* contained factual information upon which the magistrate could make a determination above and beyond the bare assertion that an informant claimed to have entered a particular apartment and observed the presence of controlled substances. Thus, the authority upon which the State relies does not suffice to justify a holding that a properly redacted affidavit would have supported a decision to authorize a search of the apartment.

After carefully reviewing the record, we conclude that, in the event that the assertions contained in the original affidavit to the effect that the informant "has proven reliable in the past to the applicant by providing information in the past that has led to the seizure of a controlled substance in Wayne County;" "has in the past provided information to the applicant that has led to the seizure of controlled substances;" and that "the applicant knows that the source knows cocaine when the source sees it" are removed, the remaining material does not suffice to support a finding of probable cause. In essence, the affidavit executed by Officer Harris simply indicates that an informant had entered the premises at some relatively recent point in time and observed controlled substances. However, the affidavit contains no support for a determination that the information provided by the informant was reliable or had been corroborated, such as evidence of the prior provision of accurate information by the informant, the observation of the informant's visit to the premises by investigating

officers, the results of prior surveillance of the apartment, or any-thing tending to inspire confidence in the informant's credibility. In the event that we were to accept the redacted affidavit as sufficient, we would effectively be holding that an adequate showing of proba-ble cause had been made when an unknown individual claims, with-out any supporting evidence whatsoever, that another person had engaged in illegal activity. This we are unwilling to do. As a result, we conclude that Defendant made a sufficient showing that a properly redacted affidavit would not support the issuance of a warrant autho-rizing a search of the apartment to preclude summary denial of his motion for appropriate relief.

### c. Other Issues

In deciding that Defendant's motions for appropriate relief and discovery should be summarily denied, the trial court, in addition to stating that "[t]he Affidavit supporting the search warrant at issue did not contain 'false statements' under the theory argued by the Defendant" and that "Defendant has failed to adequately show that trial counsel's actions in failing to file an [a]ffidavit prejudiced his defense," concluded that, "[e]ven in the absence of a supporting [a]ffi-davit, the trial judge nevertheless fairly considered the arguments requested within this Motion and rejected them." In essence, we understand this determination to amount to a suggestion that, although the trial court dismissed Defendant's suppression motion, Defendant nonetheless had the benefit of an adequate consideration of the validity of his challenge to the warrant upon which the search of the apartment was predicated. We do not believe that this conclu-sion has merit.

After the trial court summarily denied his suppression motion, Defendant argued that the belated disclosure of the fact that a con-trolled buy had occurred constituted a violation of the statutory pro-visions governing the discovery process and stated that he wished to call the informant as a witness. At that point, the prosecutor informed Defendant and the trial court that the informant had "died about [three] days after this incident." In light of Defendant's claim that he might be entitled to further discovery, the trial court allowed Defendant to "have the officer under oath to answer the question as to . . . other information that you deem discoverable that's not been made available to the Defendant." After Defendant elicited testimony casting doubt upon the accuracy of certain statements contained in the application for the issuance of a search warrant, the State objected that Defendant was conducting "a fishing expedition," lead-

ing the trial court to sustain the State's objection and direct Defendant to "get to the point." After Officer Harris provided additional testimony, including evidence that he had never worked with the informant before the day on which he obtained the search warrant and that he believed that the white powder was cocaine based solely on the fact that it "was represented to him by the black male inside of the apartment to be cocaine," the trial court sustained the State's objection to Defendant's questions concerning the officer's failure to "confirm or dispel" the informant's statement that he had bought cocaine. Although Defendant alluded to the possibility that the affidavit contained false statements by pointing out that there were contradictions between information contained in the affidavit and Officer Harris' testimony, the trial court stated that this was simply defense counsel's "opinion or interpretation of it" and that the trial court did not "read" the affidavit as containing a "misstatement of fact" and reminded Defendant's trial counsel that the only issue that he was entitled to "explor[e] was as to whether or not he had any other information to be made available to you."

This colloquy, which occurred after the trial court had summarily denied Defendant's motion, does not constitute an adequate substitute for the procedural and substantive rights that Defendant lost as the result of his trial counsel's failure to attach an affidavit to Defendant's suppression motion. Although Defendant was permitted to examine Officer Harris for the purpose of determining if he was entitled to additional discovery, the trial court precluded him from fully exploring the issue of the extent to which statements contained in Officer Harris' affidavit were false. In addition, the trial court did not make any factual findings or conclusions of law of the type that will ultimately be necessary in order to determine the validity of Defendant's request that the evidence seized as a result of the search of his apartment be suppressed. As a result, we have no hesitation in concluding that Defendant did not, in fact, have the benefit of a full airing of the issues which underlie his ineffective assistance of counsel claim at the time of trial. Thus, we are unable to agree with the trial court's determination that Defendant did, in fact, have a full and fair opportunity to litigate the issues surrounding the suppression motion and that Defendant's motion for appropriate relief should be denied for that reason.

### C. Remedy

A careful analysis of the record demonstrates that, for the reasons set forth above, the trial court erred by summarily denying

Defendant's motions for appropriate relief and discovery. Although certain of the facts underlying Defendant's motion for appropriate relief appear undisputed, such as the fact that Defendant's trial counsel failed to attach an affidavit to the suppression motion that he filed on behalf of Defendant, the State has not yet had a chance to be heard and to adduce evidence concerning certain issues that may be in dispute, such as the extent to which Defendant had standing to contest the search of the apartment and the extent to which Officer Harris acted in bad faith in drafting the affidavit submitted in support of his request for the issuance of a warrant authorizing a search of the apartment. N.C. Gen. Stat. § 15A-1420(c)(1) clearly provides that "[a]ny party is entitled to a hearing on questions of law or fact arising from [a] motion [for appropriate relief.]" *See, e.g., State v. Melvin,* 320 N.C. 508, 510, 358 S.E.2d 528, 528 (1987) (ordering that a case be "remanded to the Superior Court . . . [where] the court shall conduct a hearing . . . [at which] the [S]tate and defendant, duly represented, shall be present[, and b]oth the state and defendant shall be given opportunity to offer evidence relevant to the issue [presented in the case]"). As a result, given that neither party has had an opportunity to fully develop a record for use in evaluating the validity of Defendant's ineffective assistance of trial counsel claim, this case should be remanded to the Wayne County Superior Court for further proceedings not inconsistent with this opinion, including consideration of Defendant's discovery motion.[1]

### III. Conclusion

Thus, for the reasons set forth above, we conclude that the "defendant's motion for appropriate relief raised issues of fact with sufficient particularity to merit an evidentiary hearing" and that the trial court erred by "fail[ing] to conduct a hearing so that defendant would have an opportunity to produce evidence to substantiate his allegations." *State v. Hardison,* 126 N.C. App. 52, 57, 58, 483 S.E.2d 459, 462 (1997). As a result, the trial court's order is reversed and this case is remanded to the Wayne County Superior Court for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.

Judges BEASLEY and THIGPEN concur.

---

1. Given that Defendant's ineffective assistance of trial counsel claim was not ripe for consideration on direct appeal, we necessarily conclude that the trial court did not err by rejecting Defendant's appellate ineffectiveness claim.