BERGER, Judge.
*166 On June 8, 2016, a Wake County jury found Kurt Deion Frederick ("Defendant") guilty of trafficking heroin, maintaining a dwelling used for keeping or selling heroin, and possession with intent to sell or deliver a Schedule I controlled substance. Prior to trial, Defendant moved to suppress evidence obtained pursuant to a search of his residence.
*857 Defendant appeals from the order denying his motion to suppress, contending that the search warrant was improperly issued because it lacked probable cause. We disagree.
Factual and Procedural Background
On April 8, 2015, Detective J. Ladd with the Raleigh Police Department applied for a warrant to search the premises of 3988 Neeley Street in Raleigh for heroin, firearms, drug transaction records, and cash. The residence belonged to Defendant.
Detective Ladd attached a sworn affidavit to the search warrant which testified to his more than thirteen years of law enforcement experience, his work with Raleigh's drug and vice unit, and his specific drug interdiction training. The affidavit also set forth the following facts:
Over the last sixty days, I received information from a confidential source regarding a mid-level MDMA, heroin[,] and crystal methamphetamine dealer in the Raleigh, NC area. This source has always been trustworthy and truthful with [d]etectives[,] and I consider his/her information reliable. This confidential source is familiar with MDMA, heroin[,] and crystal methamphetamine and the way it is packaged and sold. This confidential source has always provided [d]etectives with information in the past concerning other criminal drug investigations that I have been able to corroborate and determined to be truthful.
Within the last week, this confidential source was used to arrange a controlled purchase of a quantity of "Molly" (MDMA) from 3988 Neeley St[.] Raleigh, NC 27606. The confidential source met with [d]etectives prior to making the controlled purchase of "Molly". The confidential source and his/her vehicle were searched for any illegal contraband. There was none located. The confidential source was provided with a sum of money from the Raleigh Police Department's informant funds. The confidential source arranged to meet a middle man prior to going to 3988 Neeley St[.] Raleigh, NC 27606.
*167 Detectives[ ] maintained constant surveillance on the confidential source while traveling to meet the middle man. Once the source met with the middle man, they traveled to 3988 Neeley St[.] Raleigh, NC 27606. The middle man was observed entering 3988 Neeley St[.] Raleigh, NC 27606 and returning to the source approximately two minutes later. Based on my training and experience, this was indicative of drug trafficking activity. The source met with me at a pre-determined meet location after the middle man was returned to his residence. The source provided me with a quantity of "Molly". The source and his/her vehicle were searched again for any illegal contraband. There was none located.
Within the last 72 hours, the confidential source was used to arrange a controlled purchase of heroin [from] 3988 Neeley St[.] Raleigh, NC 27606. The confidential source met with [d]etectives prior to making the controlled purchase of heroin. The confidential source and his/her vehicle were searched for any illegal contraband. There was none located. The confidential source was provided with a sum of money from the Raleigh Police Department's informant funds. The confidential source arranged to meet a middle man prior to going to 3988 Neeley St[.] Raleigh, NC 27606. Detectives[ ] maintained constant surveillance on the confidential source while traveling to meet the middle man. Once the source met with the middle man, they traveled to 3988 Neeley St[.] Raleigh, NC 27606. The middle man was observed entering 3988 Neeley St[.] Raleigh, NC 27606 and returning to the source approximately three minutes later. Based on my training and experience, this was indicative of drug trafficking activity. The source met with me at a pre-determined meet location after the middle man was returned to his residence. The source provided me with a quantity of heroin. The source and his/her vehicle was searched again for any illegal contraband. There was none located. A small sample of the heroin field tested positive for heroin.
While conducting surveillance during the controlled buy of heroin, two males were observed entering 3988 Neeley St[.] Raleigh, NC 27606. The two *168 individuals exited 3988 Neeley St[.] Raleigh, NC 27606 *858 approximately two minutes later and returned to their vehicle. Based on my training and experience, this was indicative of drug trafficking activity.
(Emphasis added).
This search warrant was granted by a magistrate, and officers executed it at the residence. More than 4.0 grams of heroin, 3.4 grams of MDMA, drug packaging materials, and $600.00 in cash were discovered in the residence. Officers observed Defendant leaving his residence with a Crown Royal bag, and detained him a short time later in his vehicle. Officers found heroin packaged for sale and more than $2,500.00 in cash in the Crown Royal bag located in the vehicle.
Defendant was arrested and charged with trafficking heroin, maintaining a dwelling for keeping or selling controlled substances, and possession of MDMA. The Wake County Grand Jury indicted Defendant on June 1, 2015 for trafficking in heroin by possession, maintaining a dwelling for keeping or selling controlled substances, and possession with intent to sell or deliver a Schedule I controlled substance.
Defendant filed a motion to suppress evidence obtained from the searches prior to trial in Wake County Superior Court. In his motion, Defendant conceded that during the first transaction, the middleman "entered the residence and approximately three minutes later came out with what appeared to be a Molly." For the second transaction, Defendant conceded that the middleman "entered the residence and returned in approximately three minutes with what appeared to be heroin." Defendant presented no evidence to support his motion, simply arguing the search warrant was facially insufficient. The trial court denied Defendant's motion, finding there was no conflict in the information provided in Detective Ladd's application for the search warrant, and the affidavit was sufficient to establish probable cause and justify issuance of the search warrant by the magistrate.
Defendant was convicted of trafficking in heroin by possession, maintaining a dwelling for keeping or selling controlled substances, and possession with intent to sell or deliver a Schedule I controlled substance. He was sentenced to a term of seventy to ninety-three months in prison. It is from the order denying his motion to suppress that Defendant timely appeals.
*169 Standard of Review
"[A] reviewing court is responsible for ensuring that the issuing magistrate had a substantial basis for concluding that probable cause existed." State v. McKinney , 368 N.C. 161, 165, 775 S.E.2d 821, 825 (2015) (citation, quotation marks, brackets, and ellipses omitted). Our Supreme Court has stated, "[t]he applicable test is whether, given all the circumstances set forth in the affidavit before the magistrate, ... there is a fair probability that contraband ... will be found in a particular place." State v. Riggs , 328 N.C. 213, 218, 400 S.E.2d 429, 432 (1991) (citation and brackets omitted).
Analysis
The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue but upon probable cause, supported by oath or affirmation and particularly describing the place to be searched and the persons or things to be seized.
U.S. Const. amend. IV. " Article I, Section 20 of the Constitution of North Carolina likewise prohibits unreasonable searches and seizures and requires that warrants be issued only on probable cause." State v. Allman , 369 N.C. 292, 293, 794 S.E.2d 301, 303 (2016). "Probable cause ... means a reasonable ground to believe that the proposed search will reveal the presence upon the premises to be searched of the objects sought and that those objects will aid in the apprehension or conviction of the offender." State v. Campbell , 282 N.C. 125, 128-29, 191 S.E.2d 752, 755 (1972) (citation omitted).
The quantum of proof required to establish probable cause is different than that required to establish guilt. Draper v. United States , 358 U.S. 307, 311-12, 79 S.Ct. 329, 331-33, 3 L.Ed. 2d 327, 331 (1959). "Probable cause requires not certainty, but only a probability or substantial chance of *859 criminal activity." McKinney, 368 N.C. at 165, 775 S.E.2d at 825 (emphasis in original) (citation and quotation marks omitted). "[The] standard for determining probable cause is flexible, permitting the magistrate to draw 'reasonable inferences' from the evidence ...." Id. at 164, 775 S.E.2d at 824-25 (citation omitted).
To determine if probable cause exists, we look at the totality of the circumstances known to the magistrate at the time the search warrant was issued. State v. Arrington , 311 N.C. 633, 638, 643, 319 S.E.2d 254, 257, 261 (1984) ; see Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed. 2d 527, reh'g *170 denied, 463 U.S. 1237, 104 S.Ct. 33, 77 L.Ed. 2d 1453 (1983). This test asks "whether the evidence as a whole provides a substantial basis for concluding that probable cause exists." State v. Williams, 319 N.C. 73, 81, 352 S.E.2d 428, 434 (1987). In applying this test, "great deference should be paid a magistrate's determination of probable cause and ... after-the-fact scrutiny should not take the form of a de novo review." Arrington, 311 N.C. at 638, 319 S.E.2d at 258.
As stated above, an affidavit is sufficient to establish probable cause "if it supplies reasonable cause to believe that the proposed search for evidence probably will reveal the presence upon the described premises of the items sought and that those items will aid in the apprehension or conviction of the offender." Id. at 636, 319 S.E.2d at 256 (emphasis added) (citation omitted). Our Supreme Court noted that federal courts have found "direct evidence linking the crime to the location to be searched is not required to support a search warrant ...." Allman , 369 N.C. at 297, 794 S.E.2d at 305.
In State v. Riggs , the search warrant application provided that law enforcement officers obtained information from a confidential informant that the defendant was selling marijuana. Riggs , 328 N.C. at 214, 400 S.E.2d at 430. Officers used two different confidential informants to set up two drug transactions with the defendant. Id. at 214-15, 400 S.E.2d at 430. Prior to meeting a middleman, officers searched the confidential informant and his vehicle, provided him with money to purchase drugs, and equipped him with a recording device. Id. at 214, 400 S.E.2d at 430. The confidential informant met the middleman, and the two went to defendant's residence, where the middleman purchased drugs from defendant. Id. at 215, 400 S.E.2d at 431. A similar transaction with a separate confidential source was undertaken approximately one month prior. Id. at 215, 400 S.E.2d at 430. Our Supreme Court upheld the magistrate's determination of probable cause, stating:
Where, as here, information before a magistrate indicates that suspects are operating, in essence, a short-order marijuana drive-through on their premises, the logical inference is that a cache of marijuana is located somewhere on those premises; that inference, in turn, establishes probable cause for a warrant to search the premises, including the residence.
Id. at 221, 400 S.E.2d at 434.
The only practical difference between Riggs and the case sub judice was the use of a recording device by the confidential informant. However, *171 the Riggs Court focused its discussion of probable cause, not on the communication between the middleman and the confidential source, but rather on the officers' experience, the conduct of the middleman, and the reasonable inferences drawn from the officers' observations. Id. at 219-21, 400 S.E.2d at 433-34.
Here, Detective Ladd received information from a reliable confidential source regarding a mid-level drug dealer who sold MDMA, heroin, and crystal methamphetamine. The confidential source had previously provided truthful information that Detective Ladd could corroborate, and the confidential source was familiar with the packaging and sale of MDMA, heroin, and crystal methamphetamine.
The same confidential source had assisted Detective Ladd with the purchase of MDMA one week prior to issuance of the search warrant. At the time of that purchase, Detective Ladd provided the confidential source with money to purchase MDMA, and he searched the confidential source and his vehicle prior to any interaction with the middleman. The confidential source met the middleman *860 prior to going to Defendant's residence, and "[d]etectives[ ] maintained constant surveillance on the confidential source while traveling to meet the middle man." The confidential source and the middleman then traveled to Defendant's residence. Detectives observed the middleman enter Defendant's residence and return to the confidential source after approximately two minutes in Defendant's house. Detective Ladd swore in his affidavit that this conduct "was indicative of drug trafficking activity" based on his training and experience. The middleman returned to his residence, and the confidential source met Detective Ladd. The confidential source provided him with MDMA, and no other contraband was found on the confidential source or in his vehicle.
A subsequent purchase of heroin took place seventy-two hours prior to issuance of the search warrant. The details of that drug transaction are nearly identical to those set forth above, except the middleman was in Defendant's residence for approximately three minutes. Further, while observing the second transaction, Detective Ladd saw two males enter Defendant's residence and exit approximately two minutes later. Detective Ladd again indicated that the conduct he observed on this occasion was "indicative of drug trafficking activity" based on his training and experience.
On two occasions, Detective Ladd personally observed his confidential source meet the middleman and travel to Defendant's residence, where the middleman entered and exited shortly thereafter. The confidential source, who had been searched and supplied with money *172 to purchase controlled substances, provided Detective Ladd with MDMA and heroin after his interaction with the middleman. Detective Ladd also observed other traffic in and out of Defendant's residence. Detective Ladd's experience and personal observations set forth in the affidavit were sufficient to establish probable cause to believe that controlled substances would probably be found in Defendant's residence.
Based on Detective Ladd's training and experience, the conduct of the middleman, and Detective Ladd's personal observations, the magistrate here could reasonably infer that the middleman obtained MDMA and heroin from Defendant's residence. Further, the magistrate could reasonably infer that there would probably be additional controlled substances at that location. Moreover, the magistrate could reasonably infer that the middleman did not have the MDMA or heroin in his possession when he met the confidential source, and his purpose in traveling to Defendant's residence was to obtain the controlled substance the confidential source supplied to Detective Ladd. Based on the totality of the circumstances, the magistrate had a substantial basis for concluding probable cause existed to believe controlled substances were located on the premises of 3988 Neeley Street in Raleigh.
Conclusion
As our Supreme Court has stated, "[t]he resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." Riggs , 328 N.C. at 222, 400 S.E.2d at 435 (emphasis added) (citations and quotation marks omitted). That reasonable minds could disagree, as shown by the dissent, demonstrates that this may be a marginal case. As such, the magistrate's probable cause determination is upheld and the trial court's denial of Defendant's motion to suppress is affirmed.
AFFIRMED.
Judge DAVIS concurs.
Judge ZACHARY dissents with separate opinion.