IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA18-1136

 Filed: 17 September 2019

Brunswick County, No. 17 CRS051856-57

STATE OF NORTH CAROLINA

 v.

ASHLEIGH CORRIN WILLIAMS

 Appeal by defendant from judgments entered 27 April 2018 by Judge James F

Ammons Jr. in Superior Court, Brunswick County. Heard in the Court of Appeals 24

April 2019.

 Attorney General Joshua H. Stein, by Assistant Attorney General Terence D.
 Friedman, for the State.

 Richard Croutharmel, for defendant-appellant.

 STROUD, Judge.

 Defendant appeals the denial of her motion to suppress and judgments for her

drug-related convictions. We reverse the denial of defendant’s motion to suppress

and judgment and remand for a new trial.

 I. Procedural Background

 We briefly summarize the procedural background. On 20 April 2017, based

upon a warrant application and affidavit by Agent Charles Melvin, the magistrate

issued a search warrant for defendant’s home, vehicles, and person. Based upon the
 STATE V. WILLIAMS

 Opinion of the Court

warrant, law enforcement searched defendant’s home and found heroin. Defendant

was then indicted for several drug-related offenses.

 In March of 2018, defendant made a motion “to suppress all evidence collected

pursuant to the search warrant[.]” Defendant raised arguments regarding the

reliability of the informants, the lack of specificity of the property searched and

seized, and a lack of probable cause; she also requested a Franks hearing1 because

she believed the affiant “made material misrepresentations to the judicial officer

reviewing the search warrant application.”

 In her “Motion to Suppress and Request for Franks Hearing[,]” (original in all

caps), defendant contended that Agent Melvin had “intentionally exaggerated” the

past cooperation and reliability of the confidential informant, Ms. Smith. Defendant

alleged Ms. Smith had done only one controlled drug buy for the Brunswick County

Vice Narcotics Unit (“BCVN”) prior to offering to buy heroin from a man known as

1 “It is elementary that the Fourth Amendment’s requirement of a factual showing sufficient to
constitute probable cause anticipates a truthful showing of facts. Franks v. Delaware, 438 U.S. 154,
57 L. Ed. 2d 667, 678 (1978). Truthful, as intended here, does not mean that every fact recited in the
warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon
information received from informants, as well as upon information within the affiant’s own knowledge
that sometimes must be garnered hastily. Rather, truthful in this context means that the information
put forth is believed or appropriately accepted by the affiant as true. Resolution of doubtful or
marginal cases in this area should be largely determined by the preference to be accorded to warrants.
Franks held that where a search warrant is issued on the basis of an affidavit containing false facts
which are necessary to a finding of probable cause, the warrant is rendered void, and evidence obtained
thereby is inadmissible if the defendant proves, by a preponderance of the evidence, that the facts were
asserted either with knowledge of their falsity or with a reckless disregard for their truth.” State v.
Fernandez, 346 N.C. 1, 13, 484 S.E.2d 350, 358 (1997) (citations, quotation marks, ellipses, and
brackets omitted).

 -2-
 STATE V. WILLIAMS

 Opinion of the Court

Vaughn who would buy it from defendant because defendant would only sell to

Vaughn.2 Ms. Smith then participated in a controlled buy on 20 April 2017 equipped

with a recording device, which showed that she picked up “an unknown black male,

alleged to be Vaughn, and travel[ed] to an unknown destination” where Vaughn left

the vehicle and returned “when the deal was complete.” But the video did not show

defendant or defendant’s home, and Vaughn did not tell Ms. Smith he had gotten the

heroin from defendant. Thus, defendant alleged the video does not corroborate Ms.

Smith’s allegations that she went to defendant’s home or that Vaughn received heroin

from defendant. The motion included as exhibits the warrant affidavit, Ms. Smith’s

informant contract signed in January of 2017, and the search warrant.

 At the beginning of the trial, the trial court heard the motion to suppress. The

State noted that defendant had requested a Franks hearing, so “it’s his burden to

produce substantial evidence of a violation, at which point the State would need to

respond.” Defendant then called Agent Charles Melvin of the Brunswick County

Sheriff’s Office to testify in support of her motion to suppress. The warrant affidavit

stated, “In the past year CS1 has worked with Agents and has provided correct and

accurate information leading to the arrests of narcotics dealers.” (Emphasis added).

As to the “[i]n the past year” language, during his testimony, Agent Melvin

acknowledged that he had “first dealt” with Ms. Smith in January of 2017, only a few

2 The warrant affidavit notes Vaughn is a nickname and does not provide his real name.

 -3-
 STATE V. WILLIAMS

 Opinion of the Court

months prior to the search of defendant, and she had done one controlled buy prior to

the one from which defendant’s arrest arose. As to the plural “arrests of narcotics

dealers” language, Agent Melvin also admitted he knew the seller from the first

controlled buy was “charged” but he did not know when that occurred or if she had

been “arrested before April 20th[.]” (Emphasis added.)

 After Agent Melvin’s testimony, defendant’s counsel and the State made

arguments regarding the Franks issue, and the trial court denied the motion:

 All right. This matter coming on to be heard on defendant’s
 motion to suppress a search warrant, a request for a
 Franks hearing, the Court has pretty much given a hearing
 on this. But after reviewing the motion to suppress, after
 reviewing the search warrant and the affidavit, after
 reviewing applicable case law, the statute law, and hearing
 testimony from the witness and hearing arguments of
 counsel, the Court denies the motion to suppress.

 Defendant’s counsel then requested “to be heard on the other issue, which is

the reliability of the unknown informant.” The trial court stated, “The information

is not unknown; right? The informant is [Ms. Smith].” Defense counsel then noted

the information about defendant

 came from ‘Vaughn’ through [Ms. Smith], that’s a separate
 issue. On that issue – that’s where the law is very clear,
 that they have to prove reliability of the middleman. The
 middleman was unknown and known after all this and
 arrested eight months later. But at the time the warrant
 was issued, they took information – they say it’s from [Ms.
 Smith]. It’s not from [Ms. Smith]. [Ms. Smith] didn’t see
 anything. [Ms. Smith] didn’t know anything. [Ms. Smith]
 never dealt with anybody . . . .

 -4-
 STATE V. WILLIAMS

 Opinion of the Court

The trial court then denied defendant’s motion to suppress again, stating:

 All right. That’s my ruling. Motion to suppress is denied.
 ....
 . . . Court reserves the right to make further findings
 of fact and conclusions of law with regard to this ruling at
 a later time, should it become necessary.

The trial court made no later findings of fact or conclusions of law and did not enter

a written order regarding the motion to suppress. Defendant’s trial then began and

she was found guilty of all six charges against her and sentenced accordingly.

Defendant appeals.

 II. Motion to Suppress

 The motion to suppress raised four arguments for suppression; we will note the

first two as relevant to the issues on appeal. First, defendant argued the information

in the search warrant application “was derived from an unknown informant [Vaughn]

and was insufficient to support a search warrant.” Although Ms. Smith was known

to Agent Melvin, nearly all of the material information came from the unknown man

identified as Vaughn, and there was no indication of Vaughn’s reliability. Second,

defendant argued that “Agent Melvin’s exaggeration of [Ms. Smith’s] past

cooperation, as set forth in the affidavit of probable cause” was a material

misrepresentation.” The alleged misrepresentations were the time period of prior

assistance and the number of prior arrests and prosecutions based upon Ms. Smith’s

cooperation.

 -5-
 STATE V. WILLIAMS

 Opinion of the Court

 A reviewing court is responsible for ensuring that
 the issuing magistrate had a substantial basis for
 concluding that probable cause existed. Our Supreme
 Court has stated, the applicable test is whether, given all
 the circumstances set forth in the affidavit before the
 magistrate, there is a fair probability that contraband will
 be found in a particular place.

State v. Frederick, ___ N.C. App. ___, ___, 814 S.E.2d 855, 858, aff’d per curiam, ___

N.C. ___, ___, 819 S.E.2d 346 (2018) (citations, quotation marks, and brackets

omitted).

A. Failure to Make Findings of Fact and Conclusions of Law

 Defendant contends the trial court violated North Carolina General Statute §

15A-977(f) when it failed to make written findings of fact and conclusions of law in

ruling on her motion to suppress, particularly as to the Franks issue. North Carolina

General Statute § 15A-977(f) requires the trial court to “set forth in the record his

findings of fact and conclusions of law” in ruling on a motion to suppress; N.C. Gen.

Stat. § 15A-977(f) (2017), although where there is no material conflict in the evidence

and the trial court’s legal conclusion is clear from the record, we may be able to review

the denial of a motion to suppress on appeal without written findings of fact and

conclusions of law:

 After a motion to suppress evidence is presented at
 the trial court, the judge must set forth in the record his
 findings of fact and conclusions of law. Our Supreme Court
 has held, the absence of factual findings alone is not error
 because only a material conflict in the evidence—one that
 potentially affects the outcome of the suppression motion—

 -6-
 STATE V. WILLIAMS

 Opinion of the Court

 must be resolved by explicit factual findings that show the
 basis for the trial court’s ruling. Even so, it is still the trial
 court’s responsibility to make the conclusions of law.
 The State argues no material conflicts in the
 evidence exist, and the trial court’s conclusion was clear
 from its ruling. The record of the suppression hearing
 reveals no material conflicts existed. . . .
 ....
 While no material conflicts exist in the evidence
 presented at the suppression hearing, the judge failed to
 provide any rationale from the bench to explain or support
 his denial of Defendant’s motion. The only statement from
 the trial court concerning Defendant’s motion was, “I’m
 going to allow the case to go forward with some reluctance,
 but—I’m going to deny the Motion to Suppress.” This lack
 of rationale from the bench precludes meaningful appellate
 review.
 The trial court’s failure to articulate or record its
 rationale from the bench supports a remand.

State v. Howard, ___ N.C. App. ___, ___, 817 S.E.2d 232, 237–38 (2018) (emphasis

added) (citations and quotation marks omitted); see also State v. Faulk, ___ N.C. App.

___, ____, 807 S.E.2d 623, 630 (2017) (“Even though findings of fact are not required,

the trial court’s failure to provide its rationale from the bench, coupled with the

omission of any mention of the motion challenging the search warrant, precludes

meaningful appellate review of that ruling. It is the trial court’s duty to apply legal

principles to the facts, even when they are undisputed. We therefore hold that the

trial court erred by failing to either provide its rationale from the bench or make the

necessary conclusions of law in its written order addressing both of Defendant’s

motions to suppress.”).

 -7-
 STATE V. WILLIAMS

 Opinion of the Court

 The State attempts to distinguish Howard and Faulk because

 the Trial Court’s explanation of what it had reviewed in
 arriving at its finding of probable cause, [which the State
 notes is implicit,] is unlike the conclusion of law at issue in
 State v. Faulk, ___ N.C. App. ___, 807 S.E.2d 623, 630
 (2017), in which the trial court’s order failed to even
 mention one of the two motions to suppress at issue.
 Similar, the Trial Court’s conclusion of law in this case is
 more detailed than the rote conclusion in State v. Howard,
 ___ N.C. App. ___, 817 S.E.2d 232, 238 (2018), in which the
 trial court merely stated: “I’m going to allow the case to go
 forward with some reluctance, but – I’m going to deny the
 Motion to Suppress.” In sum, the Trial Court’s conclusion
 of law denying defendant’s motion to suppress is sufficient
 to satisfy N.C. Gen. Stat. § 15A_977(f).

 But we decline the State’s invitation to find the trial court’s “conclusion” in this

case sufficient. First, we note that defendant’s motion to suppress raised several

issues, and at best, the trial court’s ruling from the bench addressed only two portions

of the motion, the Franks motion and the reliability of Ms. Smith as an informant.

But under the motion and facts here, to call the trial court’s statement a “conclusion

of law” is too generous; it is a merely a denial of the motion. Were we to adopt the

State’s argument that a conclusion of probable cause is “implicit” in the ruling there

would be no need for findings of fact or conclusions of law for any denial of a motion

to suppress of this nature, since the mere denial of the motion would “implicitly”

contain a conclusion of probable cause or a ruling on whatever issue the defendant

raised in the motion to suppress.

 Also, the motion to suppress here included an issue not raised in Faulk and

 -8-
 STATE V. WILLIAMS

 Opinion of the Court

Howard since defendant requested a Franks hearing. Contrast Howard ___ N.C. App.

___, 817 S.E.2d 232, Faulk, ___ N.C. App. ___, 807 S.E.2d 623. The affidavit could

support a conclusion of probable cause only if there was no Franks violation in the

allegations about Ms. Smith and Vaughn was also a reliable informant. On this

initial issue regarding the allegations of the affidavit, the trial court stated it had

“pretty much” given a Franks hearing, but defendant is only entitled to a Franks

hearing upon “a preliminary showing that the affiant knowingly, or with reckless

disregard for the truth, made a false statement in the affidavit.” Fernandez, 346 N.C.

at 13, 484 S.E.2d at 358 (1997). Based upon this statement, the trial court apparently

agreed that defendant had made the preliminary showing required for a Franks

hearing, but never made findings addressing the issues of credibility and good faith

raised by the motion.

B. Reliability of Middleman

 But even if we assume the trial court did find that Agent Melvin’s statements

regarding the length of time Ms. Smith had worked as an informant and the number

of arrests made with her assistance were not intentional misrepresentations and

were made in good faith, most of the substantive allegations of the affidavit are based

upon Vaughn’s interactions with defendant, so his reliability as an informant was

also essential. The information provided by Ms. Smith can only be as reliable as

Vaughn, since she drove him to the general area of defendant’s home but did not

 -9-
 STATE V. WILLIAMS

 Opinion of the Court

observe Vaughn going to defendant’s home or purchasing drugs. Only the allegations

that she had purchased drugs from defendant in the past and that she believed that

defendant would at that time sell only to Vaughn were based on Ms. Smith’s own

personal knowledge. Ms. Smith did not say that Vaughn never purchased drugs from

anyone but defendant or that there was no other potential source of drugs in the area

where she took Vaughn to buy drugs. In fact, Agent Melvin testified that the area

was known as an area of high drug activity. Even if Agent Melvin was acting in good

faith and his representations about Ms. Smith’s reliability were correct, very little of

the affidavit was based upon Ms. Smith’s own information.

 Remand for additional findings regarding the Franks hearing and Ms. Smith’s

reliability would be necessary only if the affidavit demonstrates Vaughn’s reliability

as well:

 If a defendant establishes by a preponderance of the
 evidence that a false statement knowingly and
 intentionally, or with reckless disregard for the truth” was
 made by an affiant in an affidavit in order to obtain a
 search warrant, that false information must be then set
 aside. If the affidavit’s remaining content is insufficient to
 establish probable cause, the search warrant must be voided
 and the fruits of the search excluded to the same extent as if
 probable cause was lacking on the face of the affidavit.

Id. at 322-23, 502 S.E.2d at 884 (emphasis added) (citations and quotation marks

omitted).

 The “remaining content” of affidavit was based mostly upon information

 - 10 -
 STATE V. WILLIAMS

 Opinion of the Court

provided by the unknown informant, Vaughn, to Ms. Smith, since she did not

personally participate in or observe the actual purchase of drugs by Vaughn. Unlike

the ruling upon the Franks motion, the basis for the trial court’s denial of this portion

of the motion is in our record:

 THE COURT: The informant is not unknown;
 right? The informant is Ashleigh.

 MR. THOMAS: No. Ashleigh Williams is the
 defendant. The informant is CS- --

 THE COURT: I’m sorry. The informant is [Ms.
 Smith]?

 MR. THOMAS: Yes.

 MR. WRIGHT: Correct.

 THE COURT: You previously said that -- is it
 “Vaughn” or Ryan that’s going to testify?

 MR. THOMAS: Yes, sir. “Vaughn” is going to
 testify.

 THE COURT: “Vaughn,” the runner, is going to
 testify. All right.

The trial court then denied the motion indicating that the fact that Vaughn was now

known cured the fact that he was not known at the time of the affidavit, but in fact it

does not. It is undisputed that at the time of the warrant affidavit, April 2017,

Vaughn was not known to law enforcement, and there is no mention of any effort to

identify him or determine his reliability. Vaughn is merely identified as “a middle

 - 11 -
 STATE V. WILLIAMS

 Opinion of the Court

man nicknamed ‘Vaughn’” though Vaughn is the only individual who allegedly

interacted with defendant or even saw her.

 In the substantive factual allegations of the warrant affidavit,3 the only

statements based upon Ms. Smith’s own knowledge are:

 CS1 advised that CS1 has purchased fifty bags of heroin
 five times from the residence in the past six months. CS1
 advised that [defendant] used to sell to CS1 directly but
 has been scared lately. CS1 advised that [defendant]
 makes everyone use Vaughn as a middle man to come to
 the residence.

 Even if we assume Ms. Smith was properly considered as a reliable informant,

these factual allegations are the only statements for which only her reliability is

relevant. Standing alone, these allegations are not sufficient to form the basis for

probable cause to issue the search warrant. The affidavit included no information

regarding Vaughn’s reliability as an informant or even his identity, other than as a

man Ms. Smith believed defendant trusted as a drug buyer. This situation is quite

different from Frederick, because in Frederick, the reliability of the known

confidential reliable source was not questioned; the issue was regarding the

reliability of the middleman who purchased drugs. See Frederick, ___ N.C. App. at

___, 814 S.E.2d at 858-60. The warrant affidavit did not address the reliability of the

middleman, but the affidavit stated that

 Detective Ladd personally observed his confidential source

3We are referring to the factual allegations regarding Ms. Smith, Vaughn, and defendant. There is
no issue on appeal regarding the factual allegations of Agent’s Melvin’s training and experience.

 - 12 -
 STATE V. WILLIAMS

 Opinion of the Court

 meet the middleman and travel to Defendant’s residence,
 where the middleman entered and exited shortly
 thereafter. The confidential source, who had been
 searched and supplied with money to purchase controlled
 substances, provided Detective Ladd with MDMA and
 heroin after his interaction with the middleman. Detective
 Ladd also observed other traffic in and out of Defendant’s
 residence. Detective Ladd’s experience and personal
 observations set forth in the affidavit were sufficient to
 establish probable cause to believe that controlled
 substances would probably be found in Defendant’s
 residence.

Id. at ___, 814 S.E.2d at 860. In Frederick, the detective personally observed the

confidential source and the middleman go into the defendant’s residence and

purchase drugs. See id. There was no need to establish the reliability of the

middleman where the detective personally observed him going into the defendant’s

home to buy drugs. See generally id.

 Here, neither Agent Melvin nor Ms. Smith observed Vaughn going to

defendant’s home to buy drugs. Instead, the affidavit states that Ms. Smith took

Vaughn to Victory Drive and saw him “run into the yard of the residence leading to

the house” but “could not see the residence[;]” Vaughn completed “the deal[;]” Vaughn

left and then Ms. Smith returned to Agent Melvin with “the heroin purchased from

‘Vaughn’ and [defendant].” The only information in the affidavit regarding where

Vaughn purchased the drugs is based upon what Vaughn told Ms. Smith and not

upon her observations, as she did not witness the purchase of the drugs or even

Vaughn entering defendant’s home. Although Ms. Smith was searched to ensure that

 - 13 -
 STATE V. WILLIAMS

 Opinion of the Court

she had no drugs prior to the controlled buy, Vaughn was not searched prior to going

with Ms. Smith, so there was no way of knowing if he already had the drugs he

claimed to have purchased. Since the affidavit does not address Vaughn’s reliability

at all and the allegations based upon Ms. Smith’s knowledge are not sufficient to

establish probable cause, the motion to suppress should have been allowed.

 III. Conclusion

 Because the affidavit was insufficient to form the basis of probable cause for

issuance of the search warrant, we reverse the denial of defendant’s motion to

suppress and judgment and remand for a new trial.

 REVERSED and REMANDED.

 Judge COLLINS concurs in the result.

 Judge BRYANT dissents.

 - 14 -
 No. COA18-1136 – State v. Williams

 BRYANT, Judge, dissenting.

 Because I do not believe defendant’s challenge to the affidavit, which sets forth

probable cause for the search warrant, is sufficient to overcome the presumption of

validity accorded a search warrant granted by a neutral and detached magistrate, I

respectively dissent.

 The Fourth Amendment to the United States Constitution
 protects the people from “unreasonable searches and
 seizures.” U.S. Const. amend. IV. Absent exigent
 circumstances, the police need a warrant to conduct a
 search of or seizure in a home, see Payton v. New York, 445
 U.S. 573, 586 (1980), and a warrant may be issued only on
 a showing of probable cause, U.S. Const. amend. IV.

State v. Allman, 369 N.C. 292, 293, 794 S.E.2d 301, 302–03 (2016). “Probable cause

means that there must exist a reasonable ground to believe that the proposed search

will reveal the presence upon the premises to be searched of the objects sought and

that those objects will aid in the apprehension or conviction of the offender.” State v.

Howard, ___ N.C. App. ___, ___, 817 S.E.2d 232, 235 (2018) (citation omitted); see also

State v. Riggs, 328 N.C. 213, 219, 400 S.E.2d 429, 433 (1991) (“[P]robable cause

requires only a probability or substantial chance of criminal activity, not an actual

showing of such activity.” (quoting Illinois v. Gates, 462 U.S. 213, 243 n. 13, 76 L. Ed.

2d 527, 552 n. 13 (1983) (emphasis added))).

 Per statute, each application for a search warrant must contain a statement

asserting there is probable cause to believe that an item subject to seizure will be

found in the place to be searched and an affidavit setting forth the facts and
 STATE V. WILLIAMS

 BRYANT, J., dissenting

circumstances establishing the probable cause. See N.C. Gen. Stat. § 15A-244 (2), (3)

(2017).

 An “affidavit is sufficient if it supplies reasonable cause to
 believe that the proposed search for evidence probably will
 reveal the presence upon the described premises of the
 items sought and that those items will aid in the
 apprehension or conviction of the offender.” State v.
 Arrington, 311 N.C. 633, 636, 319 S.E.2d 254, 256 (1984)
 (citing State v. Riddick, 291 N.C. 399, 230 S.E.2d 506
 (1976)). The applicable test is

 whether, given all the circumstances set forth
 in the affidavit before [the magistrate],
 including “veracity” and “basis of knowledge”
 of persons supplying hearsay information,
 there is a fair probability that contraband or
 evidence of a crime will be found in a
 particular place. And the duty of the
 reviewing court is simply to ensure that the
 magistrate had a “substantial basis for . . .
 conclud[ing]” that probable cause existed.

 Id. 311 N.C. at 638, 319 S.E.2d at 257–58 (quoting Illinois
 v. Gates, 462 U.S. 213, 238, 76 L. Ed. 2d 527, 548 (1983)).

State v. Riggs, 328 N.C. at 218, 400 S.E.2d at 432; see also State v. McKinney, 368

N.C. 161, 164, 775 S.E.2d 821, 824 (2015) (“A magistrate must ‘make a practical,

common-sense decision,’ based on the totality of the circumstances, whether there is

a ‘fair probability’ that contraband will be found in the place to be searched. Gates,

462 U.S. at 238, 103 S.Ct. at 2332, 76 L. Ed. 2d at 548; e.g., State v. Benters, 367 N.C.

660, 664, 766 S.E.2d 593, 598 (2014).”).

 Courts interpreting the Fourth Amendment have

 2
 STATE V. WILLIAMS

 BRYANT, J., dissenting

 expressed a “strong preference for searches conducted
 pursuant to a warrant.” Illinois v. Gates, 462 U.S. 213, 236,
 103 S. Ct. 2317, 2331, 76 L. Ed. 2d 527, 547 (1983); State v.
 Sinapi, 359 N.C. 394, 398, 610 S.E.2d 362, 365 (2005)
 (quoting State v. Riggs, 328 N.C. 213, 222, 400 S.E.2d 429,
 434 (1991)). . . . Recognizing that affidavits attached to
 search warrants “are normally drafted by nonlawyers in
 the . . . haste of a criminal investigation,” [United States v.
 Ventresca, 380 U.S. 102, 108, 85 S. Ct. 741, 746, 13 L. Ed.
 2d 684, 689 (1965)], courts are reluctant to scrutinize them
 “in a hypertechnical, rather than a commonsense,
 manner,” id. at 109, 85 S. Ct. at 746, 13 L. Ed. 2d at 689.

 ....

 . . . The magistrate’s determination of probable cause is
 given “great deference” and “after-the-fact scrutiny should
 not take the form of a de novo review.” State v. Arrington,
 311 N.C. 633, 638, 319 S.E.2d 254, 258 (1984) (citing Gates,
 462 U.S. at 236, 103 S.Ct. at 2331, 76 L. Ed. 2d at 547).

McKinney, 368 N.C. at 164–65, 775 S.E.2d at 824–25.

 The majority appears to express sympathy toward defendant’s contentions:

that information in the search warrant affidavit “was derived from an unknown

informant[—a middle man—]” whose reliability was unknown; and that the affiant

Agent Melvin’s “exaggeration” of the confidential informant’s (Ms. Smith’s) past

cooperation was a material misrepresentation. The majority then discusses a lack of

written findings of fact and conclusions of law regarding defendant’s motion to

suppress, and cites to cases finding error in a trial court’s failure to either provide its

rationale from the bench or enter a written order with findings. Notwithstanding an

extensive discussion, the majority does not hold the trial court’s failure to make

 3
 STATE V. WILLIAMS

 BRYANT, J., dissenting

findings of fact was reversible error. Instead, the majority seems to hold that “since

the affidavit does not address [the middle man]’s reliability at all and the allegations

based upon Ms. Smith’s knowledge are not sufficient to establish probable cause, the

motion to suppress should have been allowed.” Then, finding “the affidavit . . .

insufficient to form the basis of probable cause for issuance of the search warrant,

[the majority] reverse[s] the denial of defendant’s motion to suppress and judgment

and remand[s] for a new trial.”

 In State v. Frederick, ___ N.C. App. ___, 814 S.E.2d 855, aff’d per curiam, ___

N.C. ___, 819 S.E.2d 346 (2018), a divided panel of this Court affirmed the issuance

of a search warrant predicated on the sworn affidavit of a law enforcement officer

describing his observations of a confidential source conducting controlled buys of

“Molly” (MDMA) and heroin from a Raleigh residence through a middleman. The

informant provided law enforcement officers with the identity of “a mid-level MDMA,

heroin[,] and crystal methamphetamine dealer in Raleigh.” Id. at ___, 814 S.E.2d at

857. The informant arranged and conducted the purchase through a middleman who

traveled with the informant to the Raleigh residence. Id. Law enforcement officers

observed the informant meet the middleman and watched the middleman enter the

suspect Raleigh residence, emerge two minutes later, and return to the informant,

after which, the informant provided law enforcement officers with a quantity of

MDMA. Id. The informant conducted a second controlled buy from the same

 4
 STATE V. WILLIAMS

 BRYANT, J., dissenting

residence also via a middleman shortly before the submission of the search warrant

application. The affiant wrote, “[b]ased on my training and experience, this was

indicative of drug trafficking activity.” Id. at ___, 814 S.E.2d at 858. A majority of

this Court held that “[b]ased on the totality of the circumstances, the magistrate had

a substantial basis for concluding probable cause existed to believe controlled

substances were located on the premises of [the Raleigh residence].” Id. at ___, 814

S.E.2d at 860; see also State v. Jackson, ___ N.C. App. ___, ___, 791 S.E.2d 505, 511

(2016) (“In order for a reviewing court to weigh an informant’s tip as confidential and

reliable, ‘evidence is needed to show indicia of reliability[.]’ [State v. Hughes, 353 N.C.

200, 204, 539 S.E.2d 625, 628 (2000)]. Indicia of reliability may include statements

against the informant’s penal interests and statements from an informant with a

history of providing reliable information. Benters, 367 N.C. at 665, 766 S.E.2d at 598.

Even if an informant does not provide a statement against his/her penal interest and

does not have a history of providing reliable information to law enforcement officers,

the Supreme Court has suggested that ‘other indication[s] of reliability’ may suffice.

Hughes, 353 N.C. at 204, 539 S.E.2d at 628.”).

 In McKinney, 368 N.C. 161, 775 S.E.2d 821, our Supreme Court held that a

search warrant application affidavit provided sufficient facts to support a finding of

probable cause on the following facts: “a citizen” met with a law enforcement officer

in the Greensboro Police Department and “reported observing heavy traffic in and

 5
 STATE V. WILLIAMS

 BRYANT, J., dissenting

out of [an apartment] . . . . Pointing out that the visitors made abbreviated stays”

and that the citizen had seen the apartment resident dealing narcotics in the parking

lot of the apartment complex. Id. at 162, 775 S.E.2d at 823. In response to the report,

law enforcement officers began surveillance of the apartment and observed a vehicle

driver arrive in the afternoon, enter the apartment, and exit six minutes later. Id.

An officer conducted a traffic stop of the vehicle and discovered $4,258.00 in cash on

the person of the driver, as well as a gallon-size bag containing marijuana remnants.

Id. Incident to the driver’s arrest, law enforcement officers searched the driver’s cell

phone and discovered a series of text messages exchanged minutes before the driver

entered the apartment: “Bra, when you come to get the money, can you bring a fat

25. I got the bread.” Id. The next stating, “Can you bring me one more, Bra?” In

response, “About 45,” “ight.” Id. The person to whom the driver sent the texts was

never linked to the residence under surveillance. Id.

 In a pretrial motion and hearing, the McKinney defendant moved to suppress

the evidence seized during the search of the apartment arguing there was a lack of

probable cause to support the search. Id. at 163, 775 S.E.2d at 823. The trial court

denied the motion, and defendant pled guilty preserving his right to appeal the denial

of his motion to suppress. On appeal, the Court of Appeals reversed the trial court’s

order holding that the warrant was unsupported by probable cause. Id. at 163, 775

 6
 STATE V. WILLIAMS

 BRYANT, J., dissenting

S.E.2d at 824 (citing State v. McKinney, ___ N.C. App. ___, 752 S.E.2d 726 (2014)).

Reversing the Court of Appeals, our Supreme Court noted the following:

 [The defendant] maintains that the citizen complaint
 underlying the officer’s application for the search warrant
 was unreliable because the complaint gave no indication
 when the citizen observed either the short stays or drugs
 purportedly changing hands, that the complaint was only
 a “naked assertion” that the observed activities were
 narcotics-related, and that the State failed to establish a
 nexus between [the driver]’s vehicle and [the] defendant’s
 apartment.

Id. at 165, 775 S.E.2d at 825. The Court found “[n]one of these arguments . . .

persuasive, either individually or collectively.” Id. The Court noted that information

contained in the citizen complaint was consistent with the officer’s observations of

activity around the apartment and the contents of the vehicle in conjunction with the

text messages indicated preparation for a drug transaction involving the vehicle

driver and someone he was about to meet. Id. at 166, 775 S.E.2d at 825.

 We conclude that, under the totality of circumstances, all
 the evidence described in the affidavit both established a
 substantial nexus between the marijuana remnants
 recovered from [the driver]’s vehicle and [the] defendant’s
 residence, and also was sufficient to support the
 magistrate’s finding of probable cause to search [the]
 defendant’s apartment. Considering this evidence in its
 entirety, the magistrate could reasonably conclude that the
 proposed search would reveal the presence of illegal drugs
 in the dwelling.

Id. at 166, 775 S.E.2d at 826 (citation omitted); cf. Benters, 367 N.C. 660, 766 S.E.2d

593 (holding that the search warrant application failed to provide a substantial basis

 7
 STATE V. WILLIAMS

 BRYANT, J., dissenting

to believe probable cause existed to find a marijuana grow operation at the suspect

residence where the affidavit mainly provided that the residence windows were

covered with thick mil black plastic; potting soil, fertilizer, seed starting trays, plastic

cups, metal storage rack, and portable pump sprayers were observed on the curtilage

of the residence; and the energy usage records for the residence indicated “extreme

high and low kilowatt usage”); State v. Campbell, 282 N.C. 125, 130–31, 191 S.E.2d

752, 756 (1972) (holding the search warrant application affidavit did not support a

finding of probable cause where “purely conclusory” statements indicated

substantively that persons named in the warrant application all lived in the residence

to be searched and “reliable confidential informants” had provided that the named

persons had sold narcotics to college students).

 Here, in the case before us, the affidavit submitted by Agent Melvin contained

his work history as a law enforcement officer, including his experience investigating

narcotics cases since 2012, and the following factual basis for the search warrant

application:

 In April 2017 Affiant received information from a
 confidential source of information, hereafter referred to as
 [Ms. Smith] that a black female with the first name Ashley
 lives on Victory Drive off of Freedom Star Drive. [Ms.
 Smith] advised that Ashely [sic] lives on the left of Victory
 Drive . . . and sells heroin from the residence. [Ms. Smith]
 advised that Ashley’s residence to [sic] a cream colored
 double wide residence with a swing set in the front yard.
 [Ms. Smith] advised that Ashley drives a burgundy Jeep
 Liberty with a tire cover on the back that has animal paws

 8
 STATE V. WILLIAMS

 BRYANT, J., dissenting

on it. [Ms. Smith] advised that Ashley only sells fifty bags
of heroin at a time and will not sell any less. . . . [Ms. Smith]
advised that [Ms. Smith] has purchased fifty bags of heroin
five times in the past six months from the residence on
Victory Drive . . . . [Ms. Smith] advised that Ashley has
been scared recently and is making all her customers use a
middle man named “Vaughn” to conduct the controlled
purchase from the residence. [Ms. Smith] advised that
another black male with the name “Ryan” lives at the
residence and is known to conduct heroin deals.

In the past 48 hours [Ms. Smith] advised Affiant that [Ms.
Smith] could purchase heroin from “Vaughn” and Ashley
on Victory Drive . . . . Affiant met with [Ms. Smith] at a
secured location. [A law enforcement officer] searched [Ms.
Smith] for any illegal contraband or narcotics. [The law
enforcement officer] found no illegal contraband or
narcotics on [Ms. Smith]. [The law enforcement officer]
searched [Ms. Smith’s] vehicle for any illegal contraband or
narcotics. [The law enforcement officer] advised that no
illegal contraband or narcotics were located. Affiant
provided [Ms. Smith] with an amount of U.S. Currency . . .
. Affiant provided [Ms. Smith] with a recording device.
[Ms. Smith] traveled . . . and picked up “Vaughn” at his
residence while Agents followed. [Ms. Smith] and
Vaughn” traveled to Freedom Star Drive. [Ms. Smith] and
“Vaughn” traveled down Freedom Star Drive and took a
left onto Victory Drive. Agents were not able to follow due
to counter surveillance and high narcotic area. [Ms. Smith]
stayed on Victory Drive for approximately five minutes and
[Ms. Smith] advised the deal was complete. [Ms. Smith]
and “Vaughn” traveled back to “Vaughn’s” residence . . . .
“Vaughn” departed [Ms. Smith’s] conveyance and [Ms.
Smith] departed. Agents followed [Ms. Smith] back to the
staging area. Once back at the secured location Affiant
searched [Ms. Smith] for any illegal contraband and
narcotics. Affiant located no illegal contraband or narcotics
except the heroin purchased from “Vaughn” and
[defendant]. [A law enforcement officer] searched [Ms.
Smith’s] vehicle for any illegal contraband or narcotics.

 9
 STATE V. WILLIAMS

 BRYANT, J., dissenting

[The law enforcement officer] found no illegal contraband
or narcotics in the vehicle. . . . [Ms. Smith] advised that
[after picking up “Vaughn,” she and “Vaughn”] went to the
first house on the left on Victory Drive. [Ms. Smith] advised
she parked beside the wood line on Victory Drive. [Ms.
Smith] advised [Ms. Smith] gave the issued U.S. Currency
to “Vaughn” and he departed. [Ms. Smith] advised that
“Vaughn” departed the vehicle and ran to [defendant’s]
residence. . . . [Ms. Smith] advised that [Ms. Smith] could
not see the residence but observed “Vaughn” run into the
yard of the residence leading to the house. [Ms. Smith]
advised that “Vaughn” stayed an estimated five minutes at
the residence and came back to [Ms. Smith’s] vehicle. [Ms.
Smith] advised that [Ms. Smith] has purchased fifty bags
of heroin five times from the residence in the past six
months. [Ms. Smith] advised that [defendant] used to sell
to [Ms. Smith] directly but has been scared lately. [Ms.
Smith] advised that [defendant] makes everyone use
Vaughn as a middle man to come to the residence [Ms.
Smith] advised that [Ms. Smith] transported “Vaughn”
back to his residence . . . [Ms. Smith] advised [Ms. Smith]
departed. [Ms. Smith] advised that [defendant’s] residence
is the only residence on the left side of Victory Drive.
Affiant conducted a google maps search of Victory Drive
and observed one residence on the left side of Victory Drive
. . . [Ms. Smith] identified [defendant’s] residence on the
left of Victory Drive . . . to be the same residence on Google
Maps. Affiant conducted a search using Brunswick County
GIS on Victory Drive . . . . Affiant observed only one
residence on the left side of Victory Drive . . . . Brunswick
County GIS showed the address to be 7655 Victory Drive .
. . . Affiant conducted a search on the address 7655 Victory
Drive . . . using the law enforcement database CJLEADS.
Affiant located an Ashleigh Corrin Williams and a Richard
Ryan Stallings with the listed address of 7655 Victory
Drive . . . . [Ms. Smith] identified [defendant] from the
heroin purchases to be Ashleigh Corrin Williams by photo
identification and advised that [defendant] lives at 7655
Victory Drive . . . .

 10
 STATE V. WILLIAMS

 BRYANT, J., dissenting

 The majority’s analysis of challenges to the sufficiency of the affidavit to

support a finding of probable cause hinges in large part on the reliability of Ms. Smith

and Vaughn. Absent the trial court’s findings of fact and conclusions as to Vaughn’s

reliability, the majority holds that the affidavit fails to provide sufficient probable

cause to find illegal narcotics: “Ms. Smith did not say that Vaughn never purchased

drugs from anyone but defendant or that there was no other potential source of drugs

in the area where she took Vaughn to buy drugs.” However, “[p]robable cause does

not mean . . . absolute certainty. State v. Campbell, 282 N.C. 125, 191 S.E.2d 752

(1972)). . . . A determination of probable cause is grounded in practical

considerations. Jaben v. United States, 381 U.S. 214 (1965).” State v. Arrington, 311

N.C. 633, 636, 319 S.E.2d 254, 256–57 (1984).

 The majority seems to predicate its disposition to reverse the trial court’s

ruling to deny the motion to suppress on the premise that the affidavit, standing

alone, does not support a finding of probable cause, especially when averments

potentially made in violation of Franks v. Delaware, 438 U.S. 154, 57 L. Ed. 2d 667

(1978), are excluded. However, the challenged averments of the affidavit (the length

of time Agent Melvin worked with Ms. Smith as a confidential informant and the

number of arrests made and convictions entered in direct relation to Ms. Smith’s

information) do not appear to be essential to a finding of probable cause.

 11
 STATE V. WILLIAMS

 BRYANT, J., dissenting

 Per the unchallenged averments in the affidavit, Ms. Smith—a confidential

informant known to law enforcement officers and whom the trial court was aware

was available to testify, along with Vaughn, at defendant’s trial—made a statement

against penal interest regarding her multiple purchases of heroin directly from

defendant at the defendant’s residence, see Jackson, ___ N.C. App. ___, 791 S.E.2d

505; Ms. Smith’s description of the protocol to purchase heroin from defendant’s

residence matched the conduct law enforcement officers could practically observe, see

McKinney, 368 N.C. 161, 775 S.E.2d 821; and the use of a middle-man to deliver

narcotics from the location of defendant’s residence—the same residence from which

Ms. Smith had previously purchased heroin five times within the previous six

months—along with the short delivery time (five minutes), did not make the

likelihood of finding narcotics at the suspect residence less probable, see Frederick,

___ N.C. App. ___, 814 S.E.2d 855.

 Given the totality of the circumstances set forth in the affidavit, including the

basis of knowledge provided by Ms. Smith, the affidavit describes circumstances

establishing a probability that contraband or evidence of heroin trafficking would be

found at defendant’s residence. See McKinney, 368 N.C. at 166, 775 S.E.2d at 825–

26. In accordance with our duty as a reviewing court, I would hold the magistrate

had a substantial basis for concluding there existed probable cause to search

defendant’s residence for narcotics, see id.; the trial court’s denial of defendant’s

 12
 STATE V. WILLIAMS

 BRYANT, J., dissenting

motion to suppress was supported by the affidavit establishing probable cause; and

the record showed no proof of a violation of Franks. As with many cases, this Court

would prefer detailed findings of fact and conclusions of law regarding the trial court’s

rationale for its ruling. However, where, as here, the record provides sufficient basis

to support the trial court’s ruling, and given that a neutral and detached magistrate’s

grant of a warrant to search defendant’s residence was valid and any potential defects

in the warrant application were not substantial, I would affirm the trial court’s denial

of defendant’s motion to suppress.

 13